(No. 21545.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS SCARAMUZZO, Plaintiff in Error.

*Opinion filed April 22, 1933.*

BENEDICT J. SHORT, (JAMES M. BURKE, and THOMAS E. KLUCZYNSKI, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, OTHO S. FASIG, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

An information was filed on November 20, 1931, in the municipal court of Chicago, charging Louis Scaramuzzo (hereafter referred to as defendant) with unlawfully altering, removing and obliterating the manufacturer's number upon a certain fire-arm designated as one 38-caliber blue-steel Colt automatic revolver. A motion to quash the search warrant involved in the case was overruled and a motion to suppress evidence and return certain fire-arms seized from defendant's place of business was presented. A hearing was had thereon and the motion denied by the court. A trial was then had before a jury and a verdict returned finding defendant guilty as charged in the information. Motions for a new trial and in arrest of judgment were overruled. Judgment was entered on the verdict, and defendant was sentenced to the house of correction for one year and fined $300 and costs. From that judgment defendant has sued out a writ of error from this court.

The material facts presented by the record are substantially as follows: Defendant was a gunsmith and conducted his business in Chicago at 604 Blue Island avenue. He repaired rifles, shot-guns and revolvers and had a license from the city of Chicago for the sale of ammunition. When guns were brought to him for repair he generally used a duplicate claim check, one part of which he attached to the gun and the other he gave to the customer for pre-

sentation when the repaired gun was ready for delivery. Sometimes for unpaid charges he sold guns that he had repaired. On November 2, 1931, he had in his place of business several shot-guns and revolvers. The building faced east, and a partition about seven feet high separated the store from his workshop. There were two glass show-cases in the store. Between them were a desk and a locked gate. Outside the gate and cases was the main part of the store. When the gate was open one could pass between the cases and go to the workshop, where there was a bench and a safe. A man named Belgivello slept there at night. A large number of revolvers were kept in the safe, and others, while being repaired, were left on the work bench. About 9:30 A. M. on November 2, 1931, two police officers went into defendant's store. One of them testified they had a report that fifteen shot-guns had been stolen from a certain pawnshop and that they had a list of the stolen property. He also testified they looked in the different places and shops where ammunition was sold, to see if the proprietors had licenses to sell ammunition. Defendant was asked if he had an ammunition sales license, and replied that he had. These officers looked around the store and shop. According to the testimony of defendant, which is not denied by any officer, they continued their search over the protest of defendant. One officer found a suit-case in the back room with several bottles in it, which he afterwards learned contained liquor. He placed defendant under arrest, called the police headquarters, and several other officers came to the store and further searched the premises. Belgivello came in while the officers were there and they placed him under arrest. About twenty officers who were present insisted upon defendant's opening the safe, which he refused to do without a search warrant. He testified he was finally compelled to open it when the officers brought in tools and threatened to blow it open. It contained papers and money, which was counted and given to defendant, also several re-

volvers, most of which appear to have had claim-check tags attached to them. They were examined by the police, and one of the revolvers found in the safe without numbers upon it is the one referred to in the information filed against defendant. A police officer, after seeing the contents of the safe, left the premises, obtained a search warrant from a judge of the municipal court of Chicago and returned to defendant's shop, where the warrant was served on defendant's wife. All the guns in the safe were then seized, and the officer who actually seized them said he did not know whether the particular revolver here involved had a tag on it or not. Defendant claimed it did have a tag on it. No warrant was read or given to defendant for a day or two after he was placed in jail, and he was not present when the officer returned to his store with the search warrant. He stated he did not know why he was arrested. He testified he learned his trade in Italy; that he was forty-two years old and had lived in the United States about twenty-seven years; that he made shells for a firm during the war; that he had never been arrested before and knew nothing about any numbers being removed from any guns in his shop. A doctor and a contractor testified to his good reputation, and it was stipulated that seven other persons would testify to the same effect.

It is the contention of defendant that the court erred in overruling the motion to quash the search warrant, first, because our statute on search warrants does not authorize the issuance of such a warrant to search for and seize guns or revolvers; second, the information, which was the basis of the search warrant, was unlawfully obtained; and third, the affidavit and complaint for a search warrant did not state a crime had been committed. It is also contended that the court erred in overruling the motion to suppress evidence which was obtained in violation of defendant's constitutional rights, and in overruling the motion for a new trial.

In the view we take of the case it will be necessary to consider only the contention that the motion to suppress certain evidence and to return the seized property to defendant should have been granted. This motion was made and supported by a petition setting forth how the police officers obtained the evidence upon which the information was based. The petition averred the illegality of the search and seizure as being in violation of the rights guaranteed to defendant by the Federal and State constitutions. The proof supported the averments of the petition. Section 6 of article 2 of the Illinois constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized." The guaranty of the constitution is not against all search and seizure but against unreasonable search and seizure and does not extend to an immunity from search and seizure on lawful arrest. At the time the two police officers first entered defendant's place of business they had neither a warrant for his arrest nor a search warrant, and the record does not disclose that either officer had any suspicion that defendant was implicated in any crime. One officer said that they had a report of the theft of several shot-guns and there were some shot-guns in defendant's place of business, but there is no showing that defendant was in any way connected with that theft, had any of the stolen shot-guns in his possession or was suspected of such crime. The petition for a search warrant was based on evidence wrongfully and unlawfully obtained by the police officers. The facts of this case are distinguishable from those in *People* v. *Sovetsky*, 323 Ill. 133, where the evidence of the possession of property was not procured in an unlawful manner.

Counsel for the State assert that under section 2 of the Deadly Weapon act and under authority of a city ordinance the officers had a right to inspect the contents of defendant's store. When the officers entered it they made no pretext that they were making an inspection under the provisions of the Deadly Weapon act or of any city ordinance relative to the sale of fire-arms, and the officers' statements on several occasions during their testimony was that they were there "looking around." The action of the police officers in going behind the counter and store partition over the protest of defendant, the arrival of at least twenty additional policemen, the continued search of the entire premises, lasting nearly all day, and the demands made upon defendant to open his safe, were, in our opinion, clear violations of the constitutional rights of defendant as guaranteed to him by both Federal and State constitutions. Obtaining the search warrant gave the previous search and seizure of defendant's property no legality. Nothing remained to be done after the officers returned to defendant's shop with the search warrant except to change the location of the property from defendant's safe into the hands of the police officers. An unlawful search cannot be justified by what is found, and a search which is unlawful in the beginning is not made lawful by the discovery and seizure of contraband articles. In our opinion the search and seizure were unlawful and the constitutional rights of defendant were violated. *People* v. *Castree,* 311 Ill. 392; *People* v. *Brocamp,* 307 id. 448; *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385; *People* v. *Alverson,* 226 Mich. 342.

The denial of defendant's motion and petition to suppress the evidence and return the property unlawfully seized was reversible error.

The judgment of the municipal court of Chicago is therefore reversed and the defendant is ordered discharged.

*Judgment reversed.*