(No. 26908.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ADA MARTIN *et al.*, Plaintiffs in Error.

*Opinion filed Nov. 18, 1942—Rehearing denied March 11, 1943.*

DARROW, SMITH & CARLIN, and EVERETT JENNINGS, (W. W. SMITH, of counsel,) for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiffs in error, Ada Martin and Josephine Kuder, on a trial before the criminal court of Cook county without a jury, were convicted of the crime of conspiracy to commit abortion, and sentenced to confinement in the penitentiary. One of the principal contentions made for the reversal of the cause is the obtaining of evidence, claimed to have been instrumental in the conviction of plaintiffs in error, by an unlawful search of their office, and seizure of certain books, records and papers, from which information was received disclosing the names of witnesses, who were subsequently used upon the trial. The point involves a construction of the constitution of the State of Illinois as well as the constitution of the United States, and is ground for a direct appeal to this court. *People* v. *Spain,* 307 Ill. 283; *People* v. *McGurn,* 341 id. 632; *People* v. *Humphreys,* 353 id. 340.

Upon the trial of the cause Ada Martin filed a petition in support of motion to suppress evidence obtained by an unlawful search and seizure of her premises. The defendant Josephine Kuder made a motion to join in and have the benefit of the ruling of the court upon the petition to suppress, but this was denied by the court and exception taken. The court sustained the motion to suppress the papers, records and documents unlawfully seized, but re-

fused to sustain objections to the testimony of witnesses who were discovered by use of the papers obtained in such unlawful search and used by the prosecution.

The facts disclose the police obtained information February 1, 1941, an abortion had been committed upon a certain woman, and upon talking with her learned this crime had been committed at No. 190 North State street in the city of Chicago, one of the offices of plaintiffs in error; that this information was related to Samuel Papanek, an assistant State's Attorney, and February 7, 1941, two police officers, together with some officers from the State's Attorney's office, went to No. 190 North State street and entered therein and arrested both of the defendants, and while in the office, without any search warrant or legal process, searched the premises and removed therefrom certain books, papers, records and personal property and delivered same to the office of the State's Attorney; that later, February 13, 1941, in like manner the police officers of the city of Chicago, without consent or permission, entered a certain office at No. 127 North Dearborn street, in the city of Chicago, in the possession of Ada Martin, and without a search warrant or other legal right, destroyed the combination and lock on a vault in said office and carried away records, books and other personal property belonging to Ada Martin and delivered them to the office of the State's Attorney. And later, April 29, 1941, when the daughter of Ada Martin was killed by a police officer in her home, the said Papanek and police officers appeared at the home of defendant Ada Martin and detained her and her husband and held them in custody, and without warrant or authority ransacked and searched the premises of defendants and removed certain papers and effects, and among others several envelopes containing names, addresses and data pertaining to certain persons whose names are endorsed upon the indictment.

As justification for such searches, information received by the police and State's Attorney with reference to the

woman claimed to have been aborted February 1, 1941, is set forth, and that thereafter the police officers and officers from the State's Attorney's office went to the office of Ada Martin February 7, 1941, for the express purpose of placing her and Josephine Kuder and other persons under arrest, and that in making the arrest the records and envelopes identified in evidence were discovered and turned over to the office of the State's Attorney. No offer of justification was made with respect to the search of the premises at No. 127 North Dearborn street, or the residence of the plaintiff in error.

The documents seized in this manner, without warrants, contained the names of every witness used by the prosecution except two, who testified upon formal matters. The papers were in the form of a record and contained the name, address, marital status, telephone number, date of interview, date taken, by whom referred, age, state of employment, number of children, condition with respect to menstruation, fee paid, amount remaining due, and other items of expense concerning each witness. Every witness testifying for the prosecution was one whose name was found in such records, and upon the trial testified to substantially the same things discovered in said written records; and at the time they were interviewed by the State's Attorney, preliminary to the return of the indictment and the trial of the cause, most of the witnesses were interrogated concerning the truth of the matters appearing on the cards.

The plaintiffs in error contend it was improper for the court to permit such witnesses, discovered and brought to light by the illegal search of the divers premises of plaintiffs in error, to testify at all, but on the other hand the State's Attorney contends that even though the search and seizure be illegal, if information be received therefrom of the names of witnesses, and he examines these witnesses so discovered to learn what they know of the supposed crime, it would follow such testimony had been secured

through means independent of the illegal search and seizure, and was therefore proper.

The trial court suppressed the written evidence obtained upon the search but held that the facts learned from the witnesses so discovered were proper to be received, upon the theory that talking with the witnesses made the discovery of what they would testify to independent of the illegal search and seizure.

The question involved is whether permitting the witnesses whose names and places of residence were discovered by the search of the premises of plaintiffs in error to testify violates section 6 of article II of the constitution of the State of Illinois, and the fourth amendment to the constitution of the United States. Section 6 of article II of the constitution of Illinois is as follows: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized." The fourth amendment of the constitution of the United States is substantially in the same language, and the provisions of both State and federal constitutions have been construed to have the same effect.

There is no manner of question but what the several searches and seizures of papers obtained upon the premises of plaintiff in error, Martin, were illegal and without any pretense of compliance with the law. There is likewise no question that upon motion made in apt time such evidence, so illegally obtained, will be suppressed. (*People* v. *Castree*, 311 Ill. 392.) The *Castree case* was followed in *People* v. *Prall*, 314 Ill. 518, where this court held that a person charged with crime was entitled to have certain goods, claimed to have been stolen, returned to him because the search warrant did not properly describe the property to be seized or the place to be searched. In *People* v. *Scaramuzzo*, 352 Ill. 248, a search of the premises of plaintiff

in error was made without a warrant, and certain illegal property found, after which a search warrant was obtained and served upon the defendant. A motion was made to quash the search warrant and suppress the evidence received and discovered by the illegal search. The court, in holding the evidence should be suppressed and the warrant quashed, said: "Obtaining the search warrant gave the previous search and seizure of defendant's property no legality. Nothing remained to be done after the officers returned to defendant's shop with the search warrant except to change the location of the property from defendant's safe into the hands of the police officers. An unlawful search cannot be justified by what is found, and a search which is unlawful in the beginning is not made lawful by the discovery and seizure of contraband articles. In our opinion the search and seizure were unlawful and the constitutional rights of defendant were violated."

In the *Castree case* it is also held that while ordinarily the admissibility of evidence is not affected by the source through which it comes, or the illegality of the means by which it is procured, yet in the case of evidence obtained by unlawful search and seizure the same may not be used in the trial of the cause, if a motion is made in apt time to suppress the evidence and return it to the defendant. In that case substantially all of the authorities are reviewed or commented upon, and while conceding there are some jurisdictions in which a different rule prevails, the one above is definitely adopted by the court, and adhered to in subsequent cases where the same or similar questions were involved. The similarity of the provisions of the constitution of the United States with that of Illinois makes an examination of the decisions of the United States courts of particular interest. In *Weeks* v. *United States,* 232 U. S. 383, 58 L. ed. 652, certain government officers, without warrant or authority broke open the door of the plaintiff's home and seized all of his books, letters, papers, stock certificates and other documents and delivered them to the

United States Attorney, who refused to return them to the plaintiff. A petition was filed in apt time to have such papers restored to the plaintiff. This petition was allowed in part, but denied as to those papers which tended to establish the guilt of the plaintiff upon a charge of using the mails for the purpose of transporting certain lottery tickets. The question presented to the Supreme Court was the action of the District Court in refusing to grant the petition of Weeks for the return of the papers and permitting them to be used on the trial. In overruling the trial court the Supreme Court said: "The effect of the fourth amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects, against all unreasonable searches and seizures under the *guise of law*. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of, the rights secured by the Federal constitution, should find no sanction in the judgments of the courts, which are charged with the support of the constitution at all times, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights."

In the later case of *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 64 L. ed. 319, the same question was involved, but came to the attention of the court in a different manner. The defendants were indicted and arrested in their home, where they were detained for some time. While thus detained representatives of the Department of Justice and the United States Marshal, without any au-

thority, went to the office of their company and made a clean sweep of all of the papers, books and documents found there. An application was made for the return of what had been unlawfully taken. Photographs and copies of the papers were made, and a new indictment was framed based upon the knowledge thus obtained. The District Court ordered a return of the originals but impounded the photographs and copies. Subpoenas were then served to produce the originals, and upon the refusal of defendants to produce them they were adjudged in contempt and fined. The court puts the question for determination as follows: "The government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its rights to avail itself of the knowledge obtained by that means which otherwise it would not have had. The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the constitution covers the physical possession, but not any advantages that the government can gain over the object of its pursuit by doing the forbidden act." In denying the contention of the government the court said: "In our opinion such is not the law. It reduces the fourth amendment to a form of words. (232 U. S. 393.) The essense of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it should not be used at all. Of course this, does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independant source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed."

In the present case it is claimed because plaintiffs in error were arrested at No. 190 North State street, and the

incriminating papers found by making a search at that time, that it comes within that line of authorities which hold that incriminating property found upon the person of one arrested may be used against him. This proposition is aptly answered in *Weeks* v. *United States, supra,* where the court analyzes similar contentions made by the United States: "What then is the present case? Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. It is not an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested, to discover and seize the fruits or evidence of crime. This right has been uniformly maintained in many cases. [*Citations.*] Nor is it the case of testimony offered at a trial where the court is asked to stop and consider the illegal means by which proofs, otherwise competent, were obtained. * * * Nor is it the case of burglar's tools or other proofs of guilt found upon his arrest within the control of the accused." These cases conclusively establish that it is improper to use papers or property of a defendant obtained by an illegal search, where a motion is made in apt time to suppress the evidence. The case of *People* v. *Ascey,* 304 Ill. 404, cited by the People has no application because that involved the discovery of stolen goods through the confession of the defendant. It is not authority for the use of papers illegally seized without a warrant, when a motion in apt time has been made to suppress them.

However, no case has been called to our attention which directly passes upon the question whether witnesses discovered through papers and documents obtained in an illegal search may be used. The principle seems clear that evidence obtained independently of the illegal search may be used against the defendants. (*People* v. *Castree, supra; Weeks* v. *United States, supra.*) However, it is equally clear the essence of these constitutional provisions is not merely that the evidence so seized may not be used before

the court, but may not be used at all. *Silverthorne Lumber Co. v. United States, supra.*

Analyzing the present situation we find more than the names of witnesses was obtained through the papers of plaintiff in error. As pointed out above, these papers contained substantially all of the information later testified to by such witnesses, except the one fact, alone, of the alleged illegal operation. Defendant in error claims, and the trial court held, that by interviewing the witnesses the State discovered the evidence against plaintiffs in error from an independent source; that is, it had obtained, by an illegal search and seizure, papers which gave the name, address, date of interview, time of visit, number of children, physical condition and amount paid; and the verification of these facts by the persons so named constitutes an independent source of information, making such testimony competent.

As justification for its position the prosecution cites *Benetti v. United States,* 97 Fed. (2d) 263. That case lays down the general principle that evidence of a crime received from sources independent of an illegal search may be used against a defendant, but that case turned upon the question whether the evidence used by the government was from independent sources, and in commenting upon the fact there had been an illegal search some years before the court says: "No evidence of the alleged unlawful search and seizure was offered by the government. No evidence of it was offered by appellant. There was no showing as to any prior action or of any connection between this prosecution and a prior charge of violating the prohibition act." In the *Benetti case* it was clearly established the evidence obtained by an unlawful search had nothing whatever to do with the conviction, and that all of the evidence clearly appeared to be from an independent source. Such facts do not appear in this case.

It must be kept in mind that the provisions of the constitution of the United States and of the State of Illinois in this regard were placed therein as a limitation upon the

powers of the executive officers of the government. The powers to make searches and seizures were forbidden except under special safeguards. It is our duty and the duty of all of the officers of the State to enforce these constitutional rights preserved to the people, and especially so at a time when the exigencies of the country require the exercise of vast executive powers. These provisions are to be construed liberally in favor of the people. To construe them as sought by the prosecution would "Keep the words of promise to our ear, and break it to our hope." To permit the illegal action of the officers of the law in this case to redound to its advantage would impair the constitutional safeguards under consideration. Under the circumstances presented here it requires more than a mere assertion by the State's Attorney that the evidence used against defendants was obtained from an independent source. On the face of it it could not be an independent source. No showing is made of any kind that the name of any one of the witnesses was obtained in any other manner than by an examination of the papers of the plaintiffs in error. The State's Attorney so states in his letter to the court on the question of probation. The circumstances in the present case show a total disregard of constitutional rights. Not content with the first invasion of such right in the premises at No. 190 North State street, a like invasion of defendants' rights was twice repeated, until the object, stated by one of the officers, of obtaining the names of customers, had been accomplished.

These violations of the law appear more deliberate when it is considered the State's Attorney's office had knowledge upon which it could base a search warrant at least seven days before the first illegal seizure.

It is only necessary for us to determine whether it has been shown the testimony of the witnesses was received from independent sources, and upon that question we find there is nothing in the record to substantiate the claims

of the prosecution, but upon the other hand it is almost conclusive that the information to be given by all of the material witnesses in the case was obtained from the matters illegally seized, and this being our conclusion, the evidence should have been suppressed and excluded. If it be urged the prosecution of plaintiffs in error is thus made difficult, the fault does not grow out of the provisions of the constitution, but from a disregard of such provisions by the officers sworn to support and enforce them.

Nor do we think there is any merit in the contention made as to plaintiff in error Kuder that she was not interested in the papers because she did not own them. She was an office employee, and made certain of the entries, which would be competent, if legally procured, both against her and the other defendant. She made a motion for severance, which was denied. Many of the witnesses who testified and identified the seized records did not see nor identify her. If the motion to suppress upon the part of defendant Martin had been allowed, and the case against Kuder tried separately, a large portion of the evidence received as to her was incompetent. This was prejudicial error. The case of *People* v. *Reid,* 336 Ill. 421, has no application because the defendant in that case expressly disclaimed any interest in the premises searched or the property seized. Nor does the case of *People* v. *Patterson,* 354 Ill. 313, apply, because that was a case where stolen property was discovered upon the person of a defendant arrested for crime, and comes within the exception pointed out in *Weeks* v. *United States, supra.*

It follows the judgment of the criminal court of Cook county should be reversed and the cause remanded.

*Reversed and remanded.*