THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE HEJKA, Defendant-Appellant.

(No. 71-183; ▋▋▋▋▋▋)

Third District—November 9, 1973.

Stephen Hurley, Assistant Appellate Defender, of Ottawa, for appellant.

Bruce Falk, Assistant State's Attorney, of Joliet, for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Following a jury trial, defendant George Hejka was found guilty of two counts of armed robbery. Judgment was entered pursuant thereto and defendant was sentenced to two concurrent terms of five (5) to fifteen (15) years in the State Penitentiary.

The record discloses that on December 4, 1970, Francis Ulrich, owner of Ulrich's Tavern, and a tavern patron, Harry Boyd, were robbed in the tavern by two men. One robber was armed with an automatic pistol and the other was armed with a shotgun. After they had ordered beers, one robber showed his pistol and announced, "This is a stick-up". The two men took cash in the amount of $350 from the cash register, and they also took the wallets of both Boyd and Ulrich from their persons. Ulrich's wallet contained his driver's license, some credit cards and bank identification cards, and approximately $40 in cash. Boyd's wallet contained approximately $90 in cash.

Ulrich described one of the robbers as being approximately 45 years of age, short, weighing approximately 150 pounds, and as having a pencil-line mustache and wearing a felt cap and an Eisenhower jacket.

On February 4, 1971, George Hejka was a patient in Hines Veterans Hospital. He was sharing the hospital room with one Carlos Fabian. A nurse informed Hejka that he was to be discharged. Hejka then placed a bag beneath his mattress and told Fabian to "get rid of it". Upon his discharge, Hejka was arrested in the hospital by Lockport police on a charge not involving the robbery at Ulrich's tavern. Carlos Fabian gave the bag to Father Moos, the hospital chaplain. Father Moos gave it to Peter Jennings, a hospital administrator. Jennings, in turn, gave it to another hospital employee, a Mr. Carraway, with instructions to take care of it by the proper procedure. Carraway inventoried the contents which included two bank identification cards and a driver's license belonging to Ulrich. He typed the inventory on the outside of an envelope, placed the items inside, and sealed the envelope. He then informed Lieutenant Robert Miller of the Lockport Police Department that he had some items which had been in possession of George Hejka and that these items included Ulrich's cards and license. Carraway then delivered the envelope to Officer Miller. Officer Miller then opened the envelope, ascertained that the contents were as listed on the outside, phoned Francis Ulrich, and informed Ulrich that his cards and license were in Miller's possession. Miller then learned for the first time that Ulrich had been the victim of the December 4 armed robbery and that these items had been taken from him at that time.

On February 10, 1971, George Hejka was in police custody on an

unrelated charge. Before Hejka had been charged with the December 4 robbery, Ulrich appeared at the police station, and, in the presence of Officer Hjemvick viewed photographs of five or six persons, in an attempt to determine if one of these persons had participated in the December 4 robbery. After viewing the photographs for 10 or 15 minutes, Ulrich selected photographs of two persons, one of which was George Hejka. On March 2, 1971, Ulrich testified at Hejka's preliminary hearing. Upon seeing Hejka at the hearing, he postively identified Hejka as one of the robbers. Officer Hjemvick showed the same photographs to Harry Boyd. Boyd viewed the photographs in a hospital, where Boyd had been confined as a result of injuries he had sustained in an accident. Although Boyd was under sedation when he viewed the photographs he quickly and positively identified the photograph of George Hejka.

In addition to each of the foregoing identifications, both Ulrich and Boyd identified Hejka at the trial as having been one of the two persons who committed the robbery. Each also stated at the trial that each of them had, prior to the trial, viewed the photographs and selected a photograph of Hejka. Officer Hjemvick, who was present while Ulrich and Boyd viewed the photographs, testified at the trial that Ulrich and Boyd had each separately selected a photograph of Hejka.

At the trial, Hejka's barber, who regularly cut his hair, stated he had never known Hejka to have a mustache and that if Hejka had grown one, he believed it would have been light in color. Hejka's sister and brother-in-law also testified at the trial that at the time of the robbery, Hejka was painting their house and that they had never known Hejka to wear a mustache. Hejka's sister-in-law said she washed Hejka's laundry and had never known him to possess a felt hat or an Eisenhower jacket.

Hejka testified in his own defense at the trial and stated that he had been painting the house at the time of the robbery. He said that on December 5, he was approached in the tavern by a male person about purchasing some identification cards. He said he purchased the cards for $20 so he could pass some bad checks. He admitted having been incarcerated previously for having passed bad checks.

On appeal in this Court, Hejka contends that the trial court erroneously failed to grant his pretrial motion to suppress both Ulrich's and Boyd's in-court identifications. His contention is that the identifications were a product of suggestive and prejudicial circumstances in which the viewings of the photographs were conducted. He also argues that, since he was in custody when the photographs were reviewed, he was available for a line-up and the photographic viewing should never have been conducted. He likewise argues that Hjemvick's testimony at the trial that he witnessed Ulrich and Boyd selecting defendant's photograph

was hearsay and the court should not have permitted the jury to hear it.

A second issue which Hejka raises is that the jury instruction with respect to inferences which could be drawn by the jury as a result of his possesion of Ulrich's cards was given out of order and in such manner as to have directed the jury to draw what only should have been a permissible inference. A third argument is made that the court erroneously failed to grant his motion to suppress Ulrich's cards as evidence, since the disclosure of his cards, he contends, was a product of an illegal search.

It is argued that before Ulrich had reviewed the photographs, he knew that one of the photographs was of a suspect in custody, and that the suspect's name was George Hejka. Each photograph which he viewed was a "mug shot" containing three poses. Although the record does not conclusively answer the question, we are assuming for the purpose of our review that each photograph was fully visible and, accordingly, that each subject's jail number and date of arrest may also have been visible. All but one date of arrest was between January 1 and January 18. The date appearing on the photograph of Hejka was February 5. Ulrich testified that he did not identify Hejka's photograph on the basis of the date, but said he examined the photographs for 10 or 15 minutes and selected two persons' photographs. When Ulrich appeared at the preliminary hearing, at which he made the first positive identification of Hejka, he also knew that the name of the suspect at the hearing was George Hejka. Hejka argues that Ulrich's identification was the product of suggestion.

Boyd's first positive identification of Hejka occurred when, while under sedation in the hospital, Boyd quickly and positively identified Hejka's photograph. Although Hejka claims that his photograph was spaced on a viewing plaque in a manner which would draw attention particularly to it, it actually appears that five photographs were arranged in two rows and that Hejka's appeared at the end of a row, apparently the row that contained the three photographs. Boyd was unable later to recall whether, during his viewing of the photographs, he had seen any writing on the photographs or whether he had known that a certain George Hejka was a suspect, or whether a suspect was in custody. It is apparent that Boyd's quick and positive identification indicated a positive recollection. He positively and independently identified Hejka at the trial. Hejka argues that this procedure was prejudicial because Boyd knew at the trial that defendant was accused of armed robbery and, therefore, was inclined to identify him as having committed the crime. Defendant also contends, as we have indicated, that even if Boyd had been asked to

view the photographs while he was in the hospital, the people should have arranged a subsequent line-up.

We have noted *People v. Holiday*, 47 Ill.2d 300, 265 N.E.2d 634, in which the Illinois Supreme Court suggested that, when initial identification is to be attempted of a suspect who is in custody, the use of a line-up is preferable to the use of photographs. At the time that Harry Boyd attempted to make an identification, Boyd was confined to a hospital and, as a practical matter, was unavailable to view a line-up. In the *Holiday* opinion, the Supreme Court stated (at page 307):

"We believe that photographic identification procedures ought not to be employed when the suspect is in custody and a lineup is otherwise feasible."

The line-up, however, was clearly not a feasible means of allowing Boyd to make an identification. It is also noted that while Hejka was in custody, he had been charged with an unrelated offense and not with the crime with respect to which Boyd and Ulrich were attempting to make an identification. (*Cf., People v. Lowe*, 112 Ill.App.2d 399, 251 N.E.2d 329.) *People v. Holiday*, we believe, did not state an absolute rule which precludes a photographic identification in every instance when a person is in custody for whatever reason and simply because a line-up is feasible (See: *People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1). The issue, therefore, before us is whether the identification by Ulrich and Boyd is, under the facts, a procedure which requires reversal of the convictions. As stated by the Supreme Court in the *Holiday* case (at page 307):

" '* * * each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *Simmons v. United States*, 390 U.S. 377 at 384, 19 L.Ed.2d at 1253, 88 S.Ct. 967 at 971."

The Supreme Court in *Holiday* also specifically stated that *United States v. Wade*, 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926 and *Gilbert v. California*, 388 U.S. 263, 18 L.Ed.2d 1178, 87 S.Ct. 1951, do not require the presence of defense counsel at photographic identification proceedings where defendant himself is not present. It is pointed out by the court in *Holiday*, that the doctrine of *Wade-Gilbert* relates to the right of an accused to assistance of counsel and is premised upon the occasion of a confrontation between the accused and a witness for the prosecution. ● 1 In the instant case, unlike that in *Holiday*, the persons making the

identification had an opportunity to observe the robbers during the commission of the crime. The one robber, who was identified as Hejka by both witnesses, went behind the bar in front of Boyd and Ulrich in order to remove the cash from the register. Neither Ulrich's nor Boyd's description of the robber was inconsistent. The only inconsistencies were raised by defendant and his witnesses. It became the duty of the jury to believe or disbelieve these witnesses. It is noted in the record that Boyd and Ulrich each were shown a number of photographs, not only the one of Hejka. Each, also, identified Hejka independently at the trial. There is nothing in the record to indicate that either Ulrich or Boyd were informed at or prior to viewing the photographs that defendant had been arrested in February. Accordingly, under the rule enunciated in the *Simmons* case and embraced by the Illinois Supreme Court in *Holiday,* we do not find that either Boyd's or Ulrich's pretrial photographic identification of the defendant was impermissibly suggestive if, in fact, it was suggestive at all.

■■ In *People v. Fox,* 48 Ill.2d 239, 269 N.E.2d 720, 725, the Illinois Supreme Court stated that an in-court identification of a defendant is admissible if it is "based upon a source independent of and untainted by identification at the pretrial confrontation * * * even if the pretrial confrontation was conducted in violation of defendant's right to counsel under the Sixth Amendment." It is apparent that Boyd and Ulrich independently identified Hejka at the trial and that such identifications had a source independent of the witnesses' pretrial identification. The only issue, in reality, which we are considering, is the admissibility at the trial of the in-court identifications of Ulrich and Boyd. The issues which defendant raised were matters for argument to the jury as arising from circumstances, and go to the weight of the evidence of each of the witnesses who testified. The jury was the final arbiter of such weight and was obviously persuaded as to the accuracy of the identifications. *People v. Crenshaw,* 15 Ill.2d 458, 155 N.E.2d 599; *People v. Neiman,* 90 Ill.App.2d 337, 232 N.E.2d 805.

■■ Defendant's motion to suppress only objected to the in-court identifications, and not to any testimony concerning any extra-judicial identification. With the exception of the testimony of Hjemvick, to which defendant objected because he argued it to be hearsay and not because it referred to acts in violation of Hejka's rights, Hejka did not object at the trial to testimony concerning extra-judicial identification. Since the testimony of Ulrich and Boyd with respect to the photographic identifications in question was disputed by defendant, Hjemvick's testimony simply served the function of rehabilitating Boyd's and Ulrich's credibility. The defense had challenged the procedures which had been used when

Ulrich and Boyd made photographic identifications. They cannot now be heard to complain that the people used the only reasonable means at hand to reinforce and rehabilitate their witnesses' prior testimony. (*Simmons v. U.S.* (1968), 390 U.S. 377, 19 L.Ed.2d 1247, 1253, 88 S.Ct. 967.) The testimony of Hjemvick was simply cumulative of the testimony of Ulrich and Boyd and could not have been seriously prejudicial to defendant. (See: *People v. Burks*, 105 Ill.App.2d 112, 245 N.E.2d 120.) In the *Burks* case, a police officer testified in support of the testimony of a witness who selected a photograph of a defendant. The court there stated that even if that defendant had objected to the admissibility of this type of testimony, the court would not have been in error if it had overruled the objection.

Hejka's second contention is that the trial court offered an instruction with respect to the jury's ability to draw an inference from Hejka's possession of Ulrich's cards which told the jury that if "the defendant had exclusive possession of recently stolen property," and there was no reasonable explanation of his possession, "you may infer that defendant obtained possession of the property by armed robbery." Hejka admits that this instruction, if given in context, would properly state the law. He contends, however, that it was given out of context and was the first instruction that the jury heard. The record, however, discloses that this was not so and that it was given in proper order. Defendant's assertion of error with respect to the order in which the instruction was given to the jury was not supported by the record, even if there was any substance to the objection.

Hejka's final argument concerns admissibility in evidence of Ulrich's cards which were found in the bag that Hejka left with Fabian in the hospital. Hejka instructed Fabian to "get rid of" the bag. The court, therefore, found that even if, *arguendo*, the cards once had been his, Hejka had abandoned them. He, therefore, had no legal standing to assert that the cards had been taken in a search in violation of the Fourth Amendment to the Constitution of the United States. Since Hejka had never entrusted the papers to the hospital, but rather retained them himself, and then, when the police were in close proximity, had given them to Fabian to "get rid of", we agree that the evidence supported the trial court's finding that Hejka had abandoned the evidence and that the evidence neither belonged to Hejka nor was within his control when the police received it. The fact that Carraway, a third party, happened to place the goods in a sealed envelope and included Hejka's name on the envelope, could not invest Hejka with rights with respect to the goods that otherwise he would not have had. Accordingly, when Hejka relinquished the bag he also relinquished whatever standing he might

otherwise have had to challenge the legality of a subsequent search of the envelope. *U.S. v. Jackson,* 448 F.2d 963; *U.S. v. Twilligear,* 460 F.2d 79.

We, therefore, conclude that there was no reversible error shown in the record and that the judgment of the Circuit Court of Will County should be and is affirmed.

Affirmed.

DIXON and SCOTT, JJ., concur.