THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RANDALL A. HUDDLESTON, Defendant-Appellant.

Third District   Nos. 74-395, 74-403, 74-404 cons.

Opinion filed May 12, 1976.

STOUDER, J., dissenting.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

C. Brett Bode, State's Attorney, of Pekin (James Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant, Randall Huddleston, was convicted of three burglaries in the Circuit Court of Tazewell County, the first two after jury trials and the third after a negotiated plea of guilty. In each case defendant was sentenced to a term of imprisonment for not less than four years nor more than twelve years with the sentences to run concurrently. With respect to the first two convictions, defendant appeals from a denial of his motion to quash a search warrant and suppress evidence and further contends that the sentences are excessive. In the event that defendant prevails on these

issues, defendant contends that the conviction resulting from his guilty plea should be remanded for resentencing. The cases have been consolidated for this appeal pursuant to defendant's motion.

On January 16, James Marshall, a police officer for the city of Washington, obtained a search warrant for defendant's house, based on an affidavit which recited the following facts:

Officer Marshall had been investigating five residential burglaries which had occurred between January 3, 1974, and January 6, 1974. The officer observed fresh bootprints, which he believed to be of the same size, shape and pattern at point of entry at four of the five places he investigated. The bootprints were apparently not made by any of the victims.

On January 11 or 12, a neighbor of one of the victims told the officer that on one of the nights during which the burglary occurred, she observed an "old, dark, long, low model car with an extensively damaged front end" stop in front of the victim's house and shortly thereafter drive away. This car subsequently returned with its headlights off, and two unidentified people emerged. An hour later the car drove off.

On several occasions the officer saw an automobile which was similar to the one just described parked in front of defendant's residence, although the officer's description made no reference to any damaged area. The officer had known defendant for four years and knew that defendant was on probation for burglary and possession of marijuana.

On January 16, 1974, at 4 a.m., the officer observed two plastic bags containing trash sitting by the street at curbside in front of defendant's residence awaiting pickup by the trash collector. The officer collected the bags and took them to the police station for examination. During the examination police officers found two prescription bottles in the name of one burglary victim, a prescription label bearing the name of another burglary victim and two payroll deduction slips belonging to defendant and his wife. After the search warrant was obtained, police officers searched defendant's house and found more items which had been taken during the burglaries.

After defendant was indicted for the burglaries, he moved to quash the search warrant and suppress evidence. The trial court denied the motion, and at the trial, the items found in defendant's house, as well as the items found in the trash bags, were admitted into evidence.

■■ The first issue is whether the trial court erred in denying defendant's motion to suppress. Defendant contends that the trash was illegally seized because the police had neither probable cause nor a search warrant before they seized the trash. Since the search warrant which was subsequently obtained was based in large part upon the items found in

the trash, defendant reasons that the search warrant should have been quashed. The State's position is that defendant abandoned the trash when he deposited it at the curbside for pickup and, therefore, has no standing to raise this issue.

There is no dispute that a search and seizure of the trash bags did occur. However, if defendant abandoned the trash, he lacks standing to contest the search. *People v. Hejka* (3d Dist. 1973), 15 Ill. App. 3d 181, 303 N.E.2d 433.

The question of abandonment is an ultimate fact or conclusion based upon a combination of act and intent and is to be distinguished from an examination of the "reasonableness" of a warrantless search or seizure, against which a defendant has a valid claim to Fourth Amendment protection. A person who abandons property no longer has a "reasonable expectation" of freedom from governmental intrusion into the area, or from governmental appropriation of the abandoned property. In *Abel v. United States* (1960), 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683, defendant was arrested in his hotel room, told to pack up his belongings, and taken to the Immigration and Naturalization Services Headquarters. After his departure, an FBI agent, with the permission of the hotel management, searched the room and found incriminating evidence in a wastebasket. In upholding the validity of the warrantless search, the Supreme Court stated that, since defendant had vacated the room and thrown away the articles, defendant had abandoned them. "There can be nothing unlawful in the Government's appropriation of such abandoned property." (362 U.S. 217, 241, 4 L. Ed. 2d 668, 687, 80 S. Ct. 683, 698.) See also *Parman v. United States* (1968), 130 U.S. App. D. C. 188, 399 F.2d 559, *cert. denied*, 393 U.S. 858, 21 L. Ed. 2d 126, 89 S. Ct. 109.

Defendant relies on *People v. Krivda* (1971), 5 Cal. 3d 357, 486 P.2d 1262, 96 Cal. Rptr. 62, *vacated and remanded*, 409 U.S. 33, 34 L. Ed. 2d 45, 95 S. Ct. 32, *aff'd on same grounds*, 504 P.2d 457, 105 Cal. Rptr. 521, and asserts that he had a "reasonable expectation of privacy" as to the contents of the trash bags. In *Krivda* the California Supreme Court, citing *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, upheld the defendant's expectation of privacy as to the contents of a trash can placed on a public sidewalk awaiting pickup by rubbish collectors and affirmed the suppression of evidence obtained during a warrantless search of the trash can.

This precise issue has not been decided in Illinois. Our examination of other jurisdictions convinces us that *People v. Krivda* is not persuasive authority and should not be followed.

In *Croker v. State* (Wyo. 1970), 477 P.2d 122, police enlisted the aid of a rubbish collector who picked up defendant's trash and turned it over to

the police. The court, citing *Abel v. United States*, upheld the warrantless search, a holding in direct conflict with *Krivda*. See also *State v. Purvis* (1968), 249 Ore. 404, 438 P.2d 1002.

In both *Willis v. State* (Tex. Crim. App. 1975), 518 S.W.2d 247, and *United States v. Minker* (3d Cir. 1962), 312 F.2d 632, *cert. denied*, 372 U.S. 453, 9 L. Ed. 2d 978, 83 S. Ct. 952, warrantless searches of trash barrels which defendants shared with other tenants of apartment houses were upheld. The courts found that defendant, by placing the trash in common receptacles for pickup by the trash collectors, had abandoned the trash and no longer had a protectible interest in the seized items.

A warrantless search of defendant's garbage can, which had been placed beside an alley for pickup, was upheld in *State v. Fassler* (1972), 108 Ariz. 586, 503 P.2d 807. The court declined to follow *Krivda* and held that the trash was abandoned, stating that defendant knowingly exposed the trash to the public and therefore had no legitimate expectation of privacy under such circumstances. In *United States v. Dzialak* (2d Cir. 1971), 441 F.2d 212, *cert. denied*, 404 U.S. 883, 30 L. Ed. 2d 165, 92 S. Ct. 218, a Railway Express agent took incriminating evidence from defendant's trash can placed in front of defendant's house and gave the evidence to the FBI. While it has been contended that this case is distinguishable on the basis that the search was conducted by a private person, a close reading of this case clearly shows that the court in *Dzialak* did not reach the substantive issue of the reasonableness of the search. Instead the court, citing *Abel v. United States*, found "it abundantly clear that Dzialak abandoned the property * * * and thus there 'can be nothing unlawful in the Government's appropriation of such abandoned property.' " 441 F.2d 212, 215.

In *United States v. Mustone* (1st Cir. 1972), 469 F.2d 970, government agents seized trash bags after the agents had observed defendant place the bags near curbside garbage cans "several doors away" from his residence. Defendant contended that the warrantless search violated his Fourth Amendment rights, citing *Krivda*. The court stated:

> "We are not persuaded by this authority, however, and hold that when [defendant] deposited the bags on the sidewalk he abandoned them. Implicit in the concept of abandonment is a renunciation of any 'reasonable' expectation of privacy in the property abandoned. The contrary suggestion strikes us as anomalous." 469 F.2d 970, 972.

Defendant also relies on *Ball v. State* (1973), 57 Wis.2d 653, 205 N.W.2d 353, where evidence was suppressed which had been seized after a warrantless search of the defendant's trash barrel located on defendant's property at the rear of his house. The court rejected the State's claim of abandonment and stated that, considering the location of the barrel and

the fact that the barrel was not visible from the highway was no indication that the defendant intended to relinquish control and possession.

*Ball* is readily distinguishable from the case at bar because the location of the trash in *Ball* contradicted any claim of abandonment, and defendant had not demonstrated by his acts any intention of relinquishing control or possession. In our view, the location of the trash is a significant factor in determining whether defendant has abandoned the trash or whether defendant has a "reasonable expectation of privacy," because any analysis of that expectation is inextricably bound up in the physical location of the trash. As was stated in *Patler v. Slayton* (4th Cir. 1974), 503 F.2d 472, 478:

> "The maxim * * * that the fourth amendment protects 'people not places' is of only limited usefulness, for in considering what people can reasonably expect to maintain as private we must inevitably speak in terms of places."

Similarly, in *Everhart v. State* (1975), 274 Md. 459, 337 A.2d 100, where police entered defendant's property and seized trash next to the house, the Supreme Court of Maryland reversed defendant's conviction and remanded for a determination of whether the area in which the search occurred was one in which defendant had a legitimate expectation of privacy.

In our view, defendant has neither reasonable expectation of privacy within the purview of the Fourth Amendment as to curbside trash nor the right to expect that his trash will be commingled with that of others. There is no evidence that defendant exhibited an actual expectation of privacy, but even if he had, we do not believe that such an expectation is "one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 588, 88 S. Ct. 507, 516 (Harlan, J., concurring).

Based on the foregoing authorities, we affirm the trial court's denial of defendant's motion to suppress. When defendant placed the trash at curbside for collection, he relinquished control and possession and abandoned it in the sense that he demonstrated an unequivocal intention to part with it forever. Under these circumstances, defendant must be held to have assumed the risk that the rubbish collector may permit the police to examine the trash, as in *Croker*, or that the police themselves may seize the trash, as in *Fassler* and *Mustone*.

■■ Defendant also contends that the sentences are excessive.

It is well established that a reviewing court will reduce a sentence only where the penalty constitutes a great departure from the fundamental law or its spirit and purpose. (*People v. Sprinkle* (1974), 56 Ill. 2d 257, 307 N.E.2d 161.) This court will not substitute its judgment for that of the trial court, nor will we disturb the sentence unless the record indicates an

abuse of discretion. *People v. Dawson* (3d Dist. 1975), 33 Ill. App. 3d 768, 338 N.E.2d 425; *People v. Partee* (3d Dist. 1975), 29 Ill. App. 3d 423, 331 N.E.2d 111.

Considering the nature of the offenses and the history and character of defendant, including the fact that defendant committed these offenses while on probation for burglary and possession of marijuana, we do not believe that the sentences are excessive.

Accordingly, the judgments of conviction in the Circuit Court of Tazewell County are affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I do not agree with the majority that the contents of the trash were abandoned.

On the morning of January 16, 1974, at 4 a.m., police officers drove to the residence of defendant, Randall Huddleston, located at 2161 Washington Road, Washington, Illinois. The officers observed a green trash bag and a box containing another green trash bag sitting beside the road on its shoulder directly in front of the defendant's residence. Trash was placed in a similar fashion in front of each house along the road. The officers seized both bags and transported them back to the police department where one of the officers went through each item in the trash. Two prescription containers which had been issued to Margaret Clark, the victim of an alleged burglary, were discovered as well as a prescription label bearing the name of Gilbert Edwards, another victim of an alleged burglary, and two payroll deduction slips belonging to the defendant and his wife.

The contents of the trash did not become visible until examined item by item. Furthermore, the officer, who seized the trash, knew that it had been placed on the street for collection 11 hours before.

Thereafter, a warrant, based on an officer's affidavit describing the results of the search of the trash, was issued to search the defendant's residence. The allegations contained in the affidavit, upon which the search warrant was based, have been set forth by the majority and need not be restated here.

The items seized from the trash, as well as other items seized pursuant to the warrant, were later admitted into evidence at trial.

The majority concede that *People v. Krivda* (1971), 5 Cal. 3d 357, 96 Cal. Rptr. 62, 486 P.2d 1262, *vacated and remanded*, 409 U.S. 33, 34 L. Ed. 2d 45, 93 S. Ct. 32, *aff'd on same grounds*, 504 P.2d 457, 105 Cal. Rptr.

521, is contrary to the majority position, but claim that a different rule is supported by cases from other jurisdictions. I believe *Krivda* represents the better reasoned and more persuasive viewpoint. Though the results in the cases relied upon by the majority support the majority opinion, these cases have internal weaknesses and are not sufficiently persuasive.

The majority hold that "[w]hen defendant placed the trash at curbside for collection, he relinquished control and possession and abandoned it in the sense that he demonstrated an unequivocal intention to part with it forever." Although I agree with the majority that the defendant "abandoned" the trash in the property law sense, the issue is whether there has been a surrender of a reasonable expectation of privacy with respect to the area searched or the property seized. When defendant placed his trash directly in front of his residence for collection, his reasonable expectation was that this trash would subsequently be disposed of and destroyed without prior inspection by law enforcement authorities. His reasonable expectation was that it would be free from unreasonable governmental intrusion, and would not be examined by others, at least not until the trash lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere. Accordingly, I believe that the placement of the trash beside the road for collection did not constitute an abandonment of their contents.

Since the police knew for 11 hours that the trash was on the street awaiting collection, I would hold that the search and seizure conducted here was unreasonable and violative of the defendant's fourth amendment right.

A valid finding of abandonment would deprive the defendant of standing to assert a claim that the items of evidence were improperly seized. (*Parman v. United States* (D. C. Cir. 1968), 130 U.S. App. D. C. 188, 399 F.2d 559, *cert. denied*, 393 U.S. 858, 21 L. Ed. 2d 126, 89 S. Ct. 109.) The question for this court is whether the doctrine of abandonment properly applies to the facts of this case. This inquiry differs from that involved in evaluating the "reasonableness" of a warrantless search or seizure against which a defendant has a valid claim to fourth amendment protection. See *Abel v. United States*, 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683.

Because no Illinois case has considered the precise factual pattern presented here, it is necessary to examine various authorities from other jurisdictions.

In *People v. Krivda* (1971), 5 Cal. 3d 357, 96 Cal. Rptr. 62, 486 P.2d 1262, *vacated and remanded*, 409 U.S. 33, 34 L. Ed. 2d 45, 93 S. Ct. 32, *aff'd on same grounds*, 105 Cal. Rptr. 521, 504 P.2d 457, the Supreme Court of California held that an individual has a reasonable expectation of privacy with respect to the contents of his trash barrels. The defendant

had placed the trash barrels in front of his single family residence, near the sidewalk, on public property, and adjacent to the street, for pickup by the rubbish collector. Though the search did not involve a trespass or other invasion of defendant's property, as in *People v. Edwards* (1969), 71 Cal. 2d 1096, 1104, 458 P.2d 713, 718, 80 Cal. Rptr. 633 (officers searched trash cans which were placed in the "open back yard area" behind defendant's residence, a few feet away from the back door), the court applied the rationale of *Edwards* in holding that the placement of the barrels near the sidewalk for collection did not constitute an abandonment of their contents.

> "We can readily ascribe many reasons why residents would not want their castaway clothing, letters, medicine bottles or other telltale refuse and trash to be examined by neighbors or others, at least not until the trash has lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere. Half truths leading to rumor and gossip may readily flow from an attempt to 'read' the contents of another's trash."

Accord, *Everhart v. State* (1975), 274 Md. 459, 337 A.2d 100; *Ball v. State* (1973), 57 Wis.2d 653, 205 N.W.2d 353 (articles found in trash barrel at rear of defendant's house were not abandoned merely because defendant had attempted to burn them; court also relied on curtilage test). Contra, *State v. Fassler* (1972), 108 Ariz. 586, 503 P.2d 807; *State v. Purvis* (1968), 249 Ore. 404, 438 P.2d 1002 (police recruited two hotel maids to enable them to inspect waste or trash taken from defendant's hotel room); *Croker v. State* (Wyo. 1970), 477 P.2d 122 (police asked garbage collectors not to dump defendant's garbage into truck, but to turn it over to them).

In the instant case, the items seized from the trash were in two plastic bags, and were not visible without emptying or searching through the bags' contents. In fact, the significance of these items was not ascertained until after the police had transported both trash bags to the police station. Under these circumstances, I believe the defendant had a reasonable expectation that his trash "would not be rummaged through and picked over by police officers acting without a search warrant." *People v. Krivda* (1971), 5 Cal. 3d 357, 96 Cal. Rptr. 62, 486 P.2d 1262, *vacated and remanded*, 409 U.S. 33, 34 L. Ed. 2d 45, 93 S. Ct. 32, *aff'd on same grounds*, 504 P.2d 457, 105 Cal. Rptr. 521.

A distinction is made in some cases between the trash barrels used by single-family dwellings, as in *Krivda*, and the trash barrels used by multiunit apartment buildings. For example, in *Willis v. State* (Tex. Crim. App. 1975), 518 S.W.2d 247, the court distinguished *Krivda* and rejected a claim of abandonment. The disputed item was taken by the police from a steel drum used by all the tenants in the apartment building including the

defendant. Apparently, once an individual's trash loses its "identity and meaning by becoming part of a large conglomeration of trash," that individual no longer has a reasonable expectation of privacy with respect to that trash. (See *United States v. Minker* (3d Cir. 1962), 312 F.2d 632, *cert. denied*, 372 U.S. 953, 9 L. Ed. 2d 978, 83 S. Ct. 952 (defendant's interest held insubstantial since it was confined to the right to use the trash in common with three other tenants and the building superintendent).) Without expressing my view on this distinction, I believe that both *Willis* and *Minker* provide further support for the rationale of *Krivda*.

Another line of authority, urged by the People, and stemming from the decision in *United States v. Dzialak* (2d Cir. 1971), 441 F.2d 212, *cert. denied*, 404 U.S. 883, 30 L. Ed. 2d 165, 92 S. Ct. 218, seems in direct conflict with *Krivda*. (See, *e.g.*, *United States v. Mustone* (1st Cir. 1972), 469 F.2d 970 (seizure of trash left on sidewalk "several doors away" from storefront office leased by defendant); *Willis v. State* (Tex. Crim. App. 1975), 518 S.W.2d 247. ) In *Dzialak*, the issue was whether a seizure of items from a pile of trash in front of the defendant's house by a Railway Express agent violated the defendant's fourth amendment rights. The trash had been left between the sidewalk and the street in front of defendant's home. Although the court concluded that defendant had abandoned the property, in fact there was no fourth amendment search, since the search was made by a private investigator, a Railway Express Agency employee. It is well established that evidence obtained as a result of a wrongful search by a private individual may be admitted into evidence against the victim of the search, if that search was not in any way instigated or participated in by government agents. Annot., 36 A.L.R. 3d 553 (1971).

Different considerations relative to privacy are present, as in the case of *State v. Purvis* (1968), 249 Ore. 404, 438 P.2d 1002, relied upon by the majority, where a hotel guest's room is cleaned and trash is taken by maids, at the request of the police.

In *Purvis*, a cigarette butt, identified as containing marijuana, was found by the maids on the floor of defendant's hotel room. The majority in *Purvis* conceded that the cigarette butt was not abandoned. Yet, the court held that no fourth amendment violation occurred because the maids, who in any event were privileged to be in the room, were only instructed by the police to collect items discarded by the defendant. Aside from the differences involved in considering the privacy of a hotel guest, the inconsistency in the court's reasoning—in conceding that the defendant did not abandon the property while asserting that the maids only collected property discarded by him—casts doubt on the rationale for its holding.

The holding in *Croker v. State* (Wyo. 1970), 477 P.2d 122, also relied

upon by the majority, should not be applied to the case at bar. *Croker* relied upon *Purvis*, a case which, as discussed above, involved dissimilar facts and an inconsistent rationale. In *Croker*, the police asked trash collectors not to dump defendant's trash into their truck, but to turn it over to them. The court held that no search occurred, and that "the invasion of defendant's privacy by the garbage collectors in the regular performance of their duties did not go beyond the defendant's consent."

It is difficult to understand how the conduct described in *Croker* was not a search, or that defendant consented to such conduct. Both *Purvis* and *Croker* demonstrate the difficulties courts have had in distinguishing property law concepts from fourth amendment considerations. Although property concepts are not applicable in determining whether there has been a surrender of a reasonable expectation of privacy, the courts have been unable to rationalize any rule consistent with fourth amendment rights.

Finally, the majority distinguish *Ball v. State* (1973), 57 Wis. 2d 653, 205 N.W.2d 353, wherein the court held that articles found in a trash barrel at the rear of defendant's house were within the curtilage of his house and hidden from the view of people passing by. Accordingly, the search was held to violate the defendant's expectation of privacy.

The majority conclude, on the basis of *Ball*, that "the location of the trash is a significant factor in determining whether defendant has abandoned the trash or whether defendant has a 'reasonable expectation of privacy,' because any analysis of that expectation is inextricably bound up in the physical location of the trash." This type of reasoning undermines the interest of privacy, which the fourth amendment attempts to protect, and, instead, offers to resolve this matter by the application of property law concepts such as the curtilage test (*i.e.*, is the place a constitutionally protected area?).

The United States Supreme Court has determined that the law concerning search and seizure should not be based on the historic technicalities of the property law.

> " '[I]t is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical * * * we ought not to bow to them in the fair administration of the criminal law. To do so would not comport with our justly proud claim of the procedural protections accorded to those charged with crime.' "

*Jones v. United States*, 362 U.S. 257, 266-67, 4 L. Ed. 2d 697, 705-06, 80 S.

Ct. 725, quoted in *People v. Nunn,* 55 Ill. 2d 344, 349-50, 304 N.E.2d 81, *cert. denied,* 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608.

Numerous cases involving claims of unconstitutional searches or seizures in open fields or grounds have stated their conclusions in terms of whether the place was a constitutionally protected area. (*Hester v. United States,* 265 U.S. 57, 68 L. Ed. 898, 44 S. Ct. 445, (while being pursued by revenue officers, defendant dropped a jug of whiskey in an open field).) As to whether the ground area of the curtilage is protected by the fourth amendment, some Federal courts, relying on *Hester,* have held that the "grounds" or "enclosed or unenclosed * * * grounds or open fields around * * * houses" are not protected. (See, *e.g., Martin v. United States* (5th Cir. 1946), 155 F.2d 503 (examination of jug left on the ground under a car apparently parked by the porch of a shack belonging to one of the defendants held no violation).) Other Federal courts, however, have stated that the fourth amendment protection has never been restricted to the interior of the house, but extends to open areas immediately adjacent thereto. (See *e.g., Wattenburg v. United States* (9th Cir. 1968), 388 F.2d 853.) In this latter line of authorities, the approach taken in distinguishing between an immediately adjacent protected area and an unprotected open field is to determine the extent of the curtilage. "Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family." (*McDowell v. United States* (8th Cir. 1967), 383 F.2d 599, 603.) Other courts have defined the curtilage as including "such place as is necessary and convenient to a dwelling and is habitually used for family purposes." *United States v. Potts,* (6th Cir. 1961), 297 F.2d 68.

In *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, relied upon in *People v. Nunn,* 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied,* 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608, the United States Supreme Court conceded that, although it had occasionally described its conclusion in terms of "constitutionally protected areas," this analysis would not necessarily solve every fourth amendment problem.

> "[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [Citations.]" (389 U.S. 347, 351-52, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507.)

The Court reiterated this view in *Terry v. Ohio,* 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899, 88 S. Ct. 1868, when it stated, "wherever an individual may

harbor a reasonable 'expectation of privacy,' [citation] he is entitled to be free from unreasonable governmental intrusion." See also *People v. Nunn*, 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied*, 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608.

After *Katz*, the scope of the "open field" doctrine of *Hester* and the "curtilage" test is still not entirely clear. (Compare *United States v. Capps* (9th Cir. 1970), 435 F.2d 637, with *Wattenburg v. United States* (9th Cir. 1968), 388 F.2d 853.) Nevertheless, even if the curtilage test were applied in the instant appeal, I would be inclined to hold that the trash bags, placed directly in front of defendant's residence for collection, were protected by the fourth amendment, since they served as an adjunct to the domestic economy. *Cf. People v. Edwards*, (1969), 71 Cal. 2d 1096, 458 P.2d 713, 80 Cal. Rptr. 633.

Applying *Katz* to the case at bar, the theory underlying the abandonment principle is that a person who abandons property no longer has a reasonable expectation of privacy from governmental intrusion into the area, or from governmental appropriation of the property, which was abandoned. (See *United States v. Cox* (7th Cir. 1970), 428 F.2d 638, *cert. denied*, 400 U.S. 881, 27 L. Ed. 2d 120, 91 S. Ct. 127.) Otherwise stated, the question is not whether there has been an abandonment in the property law sense (*People v. Nunn*, 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied*, 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608), but rather whether there has been a surrender of a reasonable expectation of privacy with respect to the area searched or the property seized.

I believe the weight of authority supports the view that an individual has a reasonable expectation of privacy with respect to the contents of his trash. When defendant placed his trash directly in front of his residence for collection, he did "abandon" it in the sense that he demonstrated an unequivocal intention to part with it forever. However, his reasonable expectation was that this trash would subsequently be disposed of and destroyed without prior inspection by others. His reasonable expectation was that it would be free from unreasonable governmental intrusion, and would not be examined by others, at least not until the trash lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere. The placement of the trash beside the road for collection did not constitute an abandonment of their contents.

Since the police knew for 11 hours that the trash was on the street awaiting collection, I would hold further that the search and seizure conducted here was unreasonable and violative of the defendant's fourth amendment right.

The items seized from the trash which were later admitted at trial should have been suppressed. Since these same items were used to establish probable cause, the search warrant should have been quashed. It

is well settled that evidence derived as a result of a prior illegal search or seizure, or knowledge gained through such a search or seizure, cannot be used as a valid basis to justify the existence of probable cause in a subsequent application for a warrant. *People v. Martin*, 382 Ill. 192, 46 N.E.2d 997; *People v. Scaramuzzo*, 352 Ill. 248, 185 N.E. 578.

I believe the convictions entered in the first two cases, both of which involved fourth amendment violations, should have been reversed and remanded.

For the foregoing reasons, I respectfully dissent.