60 So.2d 726 (1952)
MITCHELL
v.
STATE.
Supreme Court of Florida, Division A.
October 17, 1952.
T.T. Turnbull, Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
HOBSON, Justice.
This is another of those criminal cases which lately have frequently found their way to this Court in which it is contended that the evidence which was introduced, upon motion made, should have been suppressed because it was contraband that had been found as the result of an unlawful search and seizure contrary to the 4th Amendment to the Federal Constitution and Section 22 of the Florida Declaration of Rights, F.S.A., each of which provides against unreasonable seizures and searches.
In the recent case of Kraemer v. State, Fla., 60 So.2d 615, we determined that the contraband which was introduced in evidence against the defendants had been discovered or found as a result of an unlawful search. In that case after the illegal search had commenced one of the defendants apparently attempted to dispose of two packages, one of which was subsequently found to contain money and the other, after the arrest of the accused persons, was found to *727 contain bolita tickets. We concluded that contraband so discovered should not have been introduced in evidence against the defendants and that the evidence should have been suppressed because it was discovered as the result of an unlawful search.
In this case Joseph Mitchell attempted to dispose of what was subsequently discovered to be bolita tickets by throwing them into the brush a distance of approximately twenty or thirty feet from his car, before any search was instituted by the officer who thereafter, according to his own testimony, searched Mitchell.
It is contended by the appellant that the search started when Officer McCollum began pursuit of the car driven by the accused with the undisclosed but admitted intention to search him and/or his car. Counsel, in support of this contention, cited the case of Ford v. City of Jackson, 153 Miss. 616, 121 So. 278. The facts of that case are somewhat analogous to those in the instant action. In that case, as in this, the officer was pursuing the appellant for the purpose of overhauling and searching him, although in the instant suit Mitchell was not conscious of such fact until he had voluntarily parked his car. In each case the appellant was at the time disposing of the contraband by throwing it out of his car in order to prevent such contraband from being found upon a search. However, Joseph Mitchell, appellant herein, had nothing more than a suspicion that he might be searched when he threw the package from his car for he was not conscious of the fact that he had been pursued but simply became alarmed when Officer McCollum parked in the driveway and turned on his car lights. The appellant in the case of Ford v. City of Jackson, supra, when he disposed of the contraband, "realized that he was being pursued, and speeded up his car to get out of the way of the policemen" which fact caused him to be reasonably certain, rather than merely to suspect that he and/or his car would be searched. The Mississippi Court held: "The pursuit for the purpose of search was just as much a part of the search as the act of the officers in laying hands upon the car and looking into it for the purpose of discovering its contents." If the difference in the factual structure of the Ford v. City of Jackson case and that of the instant suit does not justify a sound distinction being made between the two cases we, nevertheless, with due respect for the ruling of the Mississippi Court, are not inclined on the point under discussion to follow the precedent set by that Court for we believe its conclusion would be a tenuous and strained construction of what is meant by the Federal and State Constitutional provisions which guarantee security against unreasonable seizures and searches, should we adopt it in the instant suit. We are convinced that no search was made of Joseph Mitchell, appellant herein, until after he had voluntarily thrown the bolita tickets from his car and that the search began only when Officer McCollum subsequently searched Mitchell's person and arrested him. Consequently, it cannot be said that the contraband which was introduced in evidence was found as the result, as was true in the Kraemer case, of an unlawful search. On the contrary the contraband was found as the result of the voluntary action of appellant prior to the search and subsequent arrest. In the Kraemer case Atelia Kraemer did not before the unlawful search voluntarily attempt to dispose of the packages containing money and bolita tickets but only did so while the unlawful search was in progress and as a result thereof. That was clearly a case in which the illegal and unlawful act of one of the arresting officers uncovered the unlawful act of one of the defendants. In this case Joseph Mitchell, as aforestated, had nothing more than suspicion that he might be searched to motivate him and did not even know until after he had parked his car that Officer McCollum had been pursuing him.
Although we doubt that Officer McCollum possessed sufficient information when he started out on his mission as the result of a "tip" that there would be a pickup of bolita tickets on the night the little drama depicted by the evidence was enacted, to justify the arrest and search of the appellant, we believe it was sufficient to justify the investigation and the observations which he made prior to the trespass which he committed when he searched the person of appellant *728 and placed him under arrest. Up to the time the officer saw Mitchell throw the package which subsequently was definitely found to contain "bolita tickets" and "bolita writings" out of his car said officer had committed no trespass, nor had he violated the right of privacy guaranteed appellant and every other citizen of this Nation and of this State by the 4th Amendment to the Federal Constitution and Section 22 of the Florida Declaration of Rights.
It is true that Lieut. McCollum did not retrieve the package containing "bolita tickets" and "bolita writings" until after he had arrested and searched appellant. However, the all-important fact remains that it was the voluntary act of appellant, before a trespass had been committed, and which the officer actually saw that constituted sufficient information (probable cause) to justify said officer in picking up the package which at the time was in the brush upon land not claimed to be owned by appellant or any member of his family, nor was it contended that said real property was in his lawful custody and under his control. We make the foregoing observation without intending to suggest that we have accepted at face value the testimony of the officer to the effect that he actually identified the package as one containing bolita tickets by seeing it fly through the air at approximately two o'clock A.M. We have never heard of a human being who possessed sufficiently powerful x-ray eyes as to enable him to perform such a feat. We attribute this bit of dubious testimony to over-enthusiasm and to his firm and steadfast belief that the package contained bolita tickets, which suspicion was engendered perhaps by long years of experience as a law enforcement officer.
Since we have concluded that the bolita tickets were not discovered as the result of an unlawful trespass or search, it follows that our judgment must be one of affirmance. See the following cases which we conclude are in point in this case but which we did not consider controlling in the case of Kraemer v. State, supra; Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Billingsley v. State, 156 Tenn. 116, 299 S.W. 797; Goodman v. State, 158 Miss. 269, 130 So. 285; Coleman v. State, 111 Tex.Cr.R. 154, 11 S.W.2d 794.
Affirmed.
SEBRING, C.J., and TERRELL and THOMAS, JJ., concur.