368 So.2d 1331 (1979)
The STATE of Florida, Appellant,
v.
Timothy OLIVER, Appellee.
No. 78-639.
District Court of Appeal of Florida, Third District.
March 13, 1979.
Rehearing Denied April 18, 1979.
*1333 Janet Reno, State's Atty., and Ira N. Loewy, Asst. State's Atty., for appellant.
Bennett H. Brummer, Public Defender and Bruce A. Rosenthal, Asst. Public Defender, for appellee.
Before HENDRY and HUBBART, JJ., and EZELL, BOYCE F., JR., (Ret.), Associate Judge.
HUBBART, Judge.
This is a criminal prosecution for unlawful possession of marijuana in which the trial court granted the defendant's motion to suppress the subject marijuana on unreasonable search and seizure grounds. The state takes an appeal therefrom, which appeal we have jurisdiction to entertain. § 924.071(1), Fla. Stat. (1977).
The central question presented for review is whether the police retrieval of evidence discarded in the public streets by a defendant (a) after being illegally ordered to stop by the police but (b) before the police have begun a physical search of the defendant's person or property, constitutes a search of the defendant's person within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 12 of the Florida Constitution. We hold that such evidence has been voluntarily abandoned by the defendant in an area where he has no reasonable expectation of privacy for the purpose of avoiding a police search and for that reason the police retrieval of such evidence from the public streets does not constitute a search of the defendant's person within the meaning of the above constitutional provisions. Accordingly, we reverse the order under review.

A
The facts surrounding the seizure of the subject marijuana are undisputed. On December 7, 1977, at approximately 11:45 a.m., Officer Michael Liotti and Detective Wasserman *1334 of the City of Miami Police Department were on patrol in an unmarked police car in the vicinity of Miami Avenue between 65th Street and 70th Street in Miami, Florida. They were investigating residential burglaries in that area and had received reports that some such burglaries may have been committed by young black teenagers on bicycles. The police officers observed the defendant Timothy Oliver and his brother Jerry, both black teenagers, riding bicycles on a pleasant Miami day. The officers had never seen these young men in the area and decided to follow them on the hunch that they might have something to do with the residential burglaries the police were investigating. The officers followed at a safe distance for a few blocks, waited while the pair pulled into a nearby gas station for a soft drink, and then continued to follow them for several more blocks. During the entire time the officers conducted this surveillance, nothing untoward or suspicious occurred other than the two teenagers riding slowly, leisurely looking around the neighborhood.
In the 5600 block of Miami Avenue, the police pulled along side the two teenagers, identified themselves as police officers, and told the two to pull over. Officer Liotti testified that their purpose in doing so was to temporarily detain and question the defendant and his companion concerning the residential burglaries in the area; the officers had no intention of arresting the two young men had they proved cooperative. After being ordered to stop, the defendant and his brother continued riding their bicycles while the defendant was seen to throw a paper bag to the ground on the public street. Detective Wasserman caught up to and detained the defendant and his brother while Officer Liotti retrieved the bag discarded by the defendant. An examination of the bag's contents revealed a substance which appeared to be marijuana. The defendant was thereupon arrested for unlawful possession of marijuana.
The state charged the defendant by information with unlawful possession of more than five grams of marijuana [§§ 893.03(1)(c), 893.13(1)(e), (f), Fla. Stat. (1977)] before the Circuit Court of the Eleventh Judicial Circuit of Florida. The defendant entered a plea of not guilty and filed a pre-trial motion to suppress the subject marijuana on unreasonable search and seizure grounds. The trial court took testimony on the motion wherein the above facts were established and thereafter entered an order granting the defendant's motion to suppress. The state appeals.

B
The Fourth Amendment to the United States Constitution and Article I, Section 12, of the Florida Constitution guarantees to the people, among other things, the right "to be secure in their persons ... against unreasonable searches and seizures." Central to invoking this constitutional guarantee is a threshold showing that a government officer has seized and searched a person. In the instant case, there is no question that the police seized the defendant's person in the constitutional sense when they ordered the defendant to stop for the purpose of temporary questioning, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); nor is there any doubt that this seizure was unreasonable as it was based on a bare suspicion. Mullins v. State, 366 So.2d 1162 (Fla. 1978). The able trial judge so concluded in the order under review and we are in complete agreement therewith.
The controversy in this case centers on whether the police searched the defendant's person when they retrieved the suspect marijuana from the public streets following the unreasonable seizure of the defendant. Stated another way, the question is whether the defendant voluntarily abandoned the suspect marijuana when he threw it into the public streets after being ordered to stop by the police or whether such abandonment was involuntary as being fatally tainted by the unreasonable police stop. If it is the former, no search of the person has taken place, Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); if it is the latter, such a search has taken *1335 place under the fruit of the poisonous tree doctrine. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Our constitutional analysis must necessarily center on resolving this issue.

C
A search in the Fourth Amendment sense has been narrowly defined as "an inspection or examination of places closed from public or general view, and requires some measure of force or intrusion." State v. Ashby, 245 So.2d 225, 227 (Fla. 1971). More broadly, it has also been held that "the Fourth Amendment governs all intrusions on personal security by agents of the public. If there is an intrusion upon personal security by an officer, there is a search." Elson v. State, 337 So.2d 959, 963 (Fla. 1976). Essentially, then, a search and seizure under the Fourth Amendment covers any official invasion of a person's reasonable expectation of privacy as to his person, house, papers or effects. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Huffer v. State, 344 So.2d 1332 (Fla.2d DCA 1977).
Searches of the person therefore include any physical touching of an individual's body or clothing that causes hidden objects or matters to be revealed, such as rummaging through one's pockets or clothing, Sibron v. New York, 392 U.S. 40, 63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), patting down one's outer clothing without going into the pockets or other inner recesses, Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed. 889 (1968), knocking property loose from an individual by tackling him, Ippolito v. State, 80 So.2d 332 (Fla. 1955), extracting an individual's blood by means of a hypodermic needle, Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), or taking scrapings from beneath his fingernails, Cupp v. Murphy, 412 U.S. 291, 295, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). A police demand that an individual disclose or hand over a concealed object is treated as a search, Moore v. State, 181 So.2d 164 (Fla.3d DCA 1965); United States v. Hallman, 365 F.2d 289 (3d Cir.1966); Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961), as is a police demand that an individual open drawers and physically move the contents therein from side to side for police viewing. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
It is not a search, however, for the police to retrieve property which a defendant has voluntarily abandoned in an area where he has no reasonable expectation of privacy, Freyre v. State, 362 So.2d 989, 991 (Fla.3d DCA 1978), as where a person discards property (a) in the open fields while being pursued by the police, Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), or (b) in the public street either prior to an attempted police stop, Mitchell v. State, 60 So.2d 726 (Fla. 1952); Holliday v. State, 104 So.2d 137 (Fla.1st DCA 1958); State v. Jackson, 240 So.2d 88 (Fla.3d DCA 1970), or after such a stop has been attempted or completed, State v. Nittolo, 317 So.2d 748 (Fla. 1975); State v. Padilla, 235 So.2d 309 (Fla.3d DCA 1970), or (c) in a hotel room or shack which has been vacated, Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Jones v. State, 332 So.2d 615 (Fla. 1976). Central to this line of cases is the court's conclusion that the police seizure of such evidence does not invade a reasonable expectation of privacy belonging to the person in question. In each case, the person has made a voluntary decision to avoid a police search by discarding evidence in an area where he has no Fourth Amendment protection. As a consequence, he cannot later claim that, notwithstanding his conduct, he was the victim of a police search as to the evidence he discarded.
In the instant case, we are concerned with whether the defendant voluntarily abandoned the suspect marijuana in view of the prior illegal police stop of the defendant. Admittedly, the cases here are in some conflict, but the weight of authority is that a person's otherwise voluntary abandonment of property cannot be tainted or made involuntary by a prior illegal police *1336 stop of such person. Freyre v. State, 362 So.2d 989 (Fla.3d DCA 1978); Smith v. State, 333 So.2d 91 (Fla.1st DCA 1976); Riley v. State, 266 So.2d 173 (Fla.4th DCA 1972). Contra: Stanley v. State, 327 So.2d 243 (Fla.2d DCA 1976). Only when the police begin to conduct an illegal search can a subsequent abandonment of property be held involuntary as being tainted by the prior illegal search, Kraemer v. State, 60 So.2d 615 (Fla. 1952); Earnest v. State, 293 So.2d 111 (Fla.1st DCA 1974); State v. Neri, 290 So.2d 500 (Fla.2d DCA 1974), and even that result may vary depending on the facts of the case. Freyre v. State, 362 So.2d 989, 991 (Fla.3d DCA 1978).
Fundamental Fourth Amendment interests as well as sound logic support the prevailing case law in this subject. Until an actual police search has begun, it cannot be assumed that the police will search a person whom they have temporarily stopped on the street or that they will search such a person's car or other personal belongings. Not every temporary detention necessitates such action. State v. Lundy, 334 So.2d 671, 673 (Fla. 4th DCA 1976). As a consequence, a person's abandonment of property subsequent to an illegal police stop can hardly be considered the product of the stop. In any event, no person can have a reasonable expectation of privacy [which is at the core of Fourth Amendment protection] with respect to property which he has decided to discard in the public streets in hope of avoiding a police search. Such a decision precludes him from later asserting Fourth Amendment protection as to such property.
In the instant case, the defendant discarded property in the public streets after being illegally ordered to stop by the police. This otherwise voluntary abandonment of property in an area where the defendant had no reasonable expectation of privacy was in no sense prompted or tainted by the illegal police stop. Indeed, all agree that the police officers herein intended to stop and briefly question the defendant, rather than to arrest and search him. Moreover, the defendant no longer had any reasonable expectation of privacy in the property which he discarded because he divested himself of all possession therein by dropping it in a place where the public had complete access. This voluntary decision to avoid a police search by abandonment precludes him from now claiming that he was the victim of a search as to the property he discarded. No interest protected by the Fourth Amendment or Article I, Section 12, of the Florida Constitution was invaded when the police retrieved the suspect marijuana from the public streets.

D
This decision in no way authorizes open season by the state on people who walk or drive in the public streets. The court is fully cognizant that the state's claim of abandonment like other testimony, can be spuriously as well as credibly asserted at the trial level. It is the function of the trial court to carefully weigh abandonment testimony against the other circumstances in the case, particularly where, unlike this case, the police officer involved has a past history of giving remarkably similar testimony in other cases. Although this court is precluded from re-weighing or reevaluating abandonment testimony, we do reserve the right, as in any other case, to reject "`inherently incredible and improbable testimony or evidence.'" Shaw v. Shaw, 334 So.2d 13, 16 (Fla. 1976). The abandonment or plain sight doctrine should never be cynically employed by the state as a way around the Fourth Amendment. In the instant case, our review of the record reveals no such inherently incredible or improbable testimony.
The order under review is reversed and the cause remanded to the trial court for further proceedings.
Reversed and remanded.