388 So.2d 1326 (1980)
STATE of Florida, Appellant,
v.
David Eugene SCHULTZ, Appellee.
No. 78-2355.
District Court of Appeal of Florida, Fourth District.
October 8, 1980.
Rehearing Denied November 12, 1980.
*1327 Michael J. Satz, State's Atty., and Patti Englander, Asst. State's Atty., Fort Lauderdale, for appellant.
James O. Birr, Jr., Fort Lauderdale, for appellee.
MOORE, Judge.
This is an appeal by the State from an order granting the appellee's motion to suppress evidence obtained as a result of a search warrant. The warrant was issued on the basis of warrantless seizure by police of trash bags which had been placed by the appellee, David Schultz, in front of his residence for collection.
The sole issue for our consideration is whether one who places his trash in the swale area in front of his home for collection in accordance with applicable city ordinances governing trash collection maintains a reasonable expectation of privacy in that trash. We hold that he does not and reverse.
On January 26, 1978, while conducting an ongoing investigation and surveillance of Schultz's leased residence, Sergeant Craig Mott of the Sunrise Police Department observed a man exit the garage of the residence and place a total of five green, opaque, secured plastic bags and two silver trash cans on the swale area in front of the residence. Shortly thereafter, the officer confiscated the trash bags, removing them to an area where they were then examined by several officers. Examination revealed twelve partially smoked marijuana cigarettes and a cigarette holder with marijuana residue in it. Based on these findings a search warrant was issued for the premises and curtilage. In granting a motion to suppress the evidence obtained by execution of the warrant, the trial court held that Schultz had a reasonable expectation of privacy concerning the contents of his trash bags until the bags were collected by authorized trash collectors and their contents intermingled with the common trash in the garbage truck.
The essence of the State's contention is that Schultz, by placing the trash on the swale area for collection, abandoned the trash and relinquished any expectation of privacy which he might have had in the trash. Although noting that there is no Florida case directly on point, the State relies on a line of cases which hold that no search occurs when a person voluntarily abandons an item of property subsequently seized by the police. Mitchell v. State, 60 So.2d 726 (Fla. 1952); State v. Oliver, 368 So.2d 1331 (Fla. 3rd DCA 1979); Freyre v. State, 362 So.2d 989 (Fla. 3rd DCA 1978); Smith v. State, 333 So.2d 91 (Fla. 1st DCA 1976); State v. Gallo, 279 So.2d 71 (Fla. 2nd DCA 1973); Riley v. State, 266 So.2d 173 (Fla. 4th DCA 1972); State v. Jackson, 240 So.2d 88 (Fla. 3rd DCA 1970). For the most part, these cases involved attempts to dispose of contraband upon the approach of police authorities:
Central to this line of cases is the court's conclusion that the police seizure of such evidence does not invade a reasonable expectation of privacy belonging to the person in question. In each case, the *1328 person has made a voluntary decision to avoid a police search by discarding evidence in an area where he has no Fourth Amendment protection. As a consequence, he cannot later claim that, notwithstanding his conduct, he was the victim of a police search as to the evidence he discarded. State v. Oliver, supra, at 1335.
Notwithstanding the lack of controlling authority directly on point, both sides have cited numerous cases from other jurisdictions on the subject.
The reasoning of the cases holding that a person has no expectation of privacy in trash placed for collection is exemplified in People v. Huddleston, 38 Ill. App.3d 277, 347 N.E.2d 76 (1976):
When defendant placed the trash at curbside for collection, he relinquished control and possession and abandoned it in the sense that he demonstrated an unequivocal intention to part with it forever. Under these circumstances, defendant must be held to have assumed the risk that the rubbish collector may permit the police to examine the trash, as in Croker, supra, or that the police themselves may seize the trash, as in Fassler and Mustone, supra. 347 N.E.2d at 80-81.
The holding in Huddleston is apparently in line with the majority of the jurisdictions which have considered this issue. See, United States v. Vahalik, 606 F.2d 99 (5th Cir.1979), cert. denied, 444 U.S. 108, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980); United States v. Crowell, 586 F.2d 1020 (4th Cir.1978), cert. denied 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979); United States v. Shelby, 573 F.2d 971 (7th Cir.1978), cert. denied 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139 (1978); United States v. Alden, 576 F.2d 772 (8th Cir.1978), cert. denied 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978); Magna v. Benson, 536 F.2d 111 (6th Cir.1976) (Per Curiam); United States v. Mustone, 469 F.2d 970 (1st Cir.1972); United States v. Dzialak, 441 F.2d 212 (2nd Cir.1971), cert. denied, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971); United States v. Minker, 312 F.2d 632 (3rd Cir.1962), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963). See also, State v. Austin, 584 P.2d 853 (Utah 1978); People v. Klausing, 41 Ill. App.3d 588, 353 N.E.2d 441 (1976); Willis v. State, 518 S.W.2d 247 (Tex. Crim. App. 1975); Smith v. State, 510 P.2d 793 (Alaska 1973); Croker v. State, 477 P.2d 122 (Wyo. 1970).
The contrary view is illustrated in People v. Krivda, 5 Cal.3d 357, 96 Cal. Rptr. 62, 486 P.2d 1262 (1971), vacated, 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), reaffirmed, 8 Cal.3d 623, 105 Cal. Rptr. 521, 504 P.2d 457 (1973):
The placement of one's trash barrels onto the sidewalk for collection is not, however, necessarily an abandonment of one's trash to the police or general public. To the contrary, many municipalities have enacted ordinances which restrict the right to collect and haul away trash to licensed collectors, whose activities are carefully regulated. (See e.g., Los Angeles County Ord.No. 5860, ch. IX, §§ 1611-1622, 1681-1691). Moreover, these ordinances commonly prohibit unauthorized persons from tampering with trash containers. (Id., § 1710). The provisions of these ordinances would appear to refute the view that the contents of one's trash barrels become public property when placed on the sidewalk for collection. Aside from municipal ordinances, there may exist an additional element of expected privacy whenever one consigns his property to the trash can, to be dumped, destroyed and forgotten. As stated in Edwards, "The marijuana itself was not visible without `rummaging' in the receptacle. So far as appears defendants alone resided at the house. In the light of the combined facts and circumstances it appears that defendants exhibited an expectation of privacy, and we believe that expectation was reasonable under the circumstances of the case. We can readily ascribe many reasons why residents would not want their castaway clothing, letters, medicine bottles or other telltale refuse and trash to be examined by neighbors or others, at least not until the trash had lost its identity and meaning by *1329 becoming part of a large conglomeration of trash elsewhere. Half truths leading to rumor and gossip may readily flow from an attempt to `read' the contents of another's trash." (Emphasis supplied; People v. Edwards, supra, 71 Cal.2d 1096, 1104, 80 Cal. Rptr. 633, 638, 458 P.2d 713, 718). 96 Cal. Rptr. at 68, 486 P.2d at 1268.
Although we are impressed with the argument that "half truths leading to rumor and gossip may readily flow from an attempt to `read' the contents of another's trash", we are not persuaded by Krivda. The Fourth Amendment protects individuals from unreasonable searches or seizures by agents of the government, not from intrusion from neighbors or others. There is no dispute here that a seizure by the police did occur. Thus, we must determine whether the actions of the police were reasonable. In doing so, it is necessary to discuss abandonment, not in the sense of personal property concepts, but rather as it relates to an expectation of privacy.
As stated in Huddleston, supra,
[T]he location of the trash is a significant factor in determining whether defendant has abandoned the trash or whether defendant has a "reasonable expectation of privacy," because any analysis of that expectation is inextricably bound up in the physical location of the trash. As was stated in Patler v. Slayton, (4th Cir.1974), 503 F.2d 472, 478:
"The maxim ... that the fourth amendment protects `people not places' is the only limited usefulness, for in considering what people can reasonably expect to maintain as private we must inevitably speak in terms of places." Huddleston, supra, at 80.
Some locations give rise to a greater and more reasonable expectation of privacy than others. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Thus, in Ball v. State, 57 Wis.2d 653, 205 N.W.2d 353 (1973), location (trash at the rear of defendant's property) was the court's primary concern in finding no indication that the defendant intended to relinquish control and possession. And in Everhart v. State, 274 Md. 459, 337 A.2d 100 (1975), a conviction was reversed and the case remanded for determination of the defendant's legitimate expectation of privacy in the area where the search occurred.
Abandonment of personal property is the intention to part with the property forever. While an individual may demonstrate an intention to forever part with his trash by placing it in a container at the rear of his home or in a garage or carport, he may still harbor a reasonable expectation of privacy in it in the sense that it is retrievable. We are of the view, however, that once the trash is deposited on the swale for collection it is unreasonable to expect that its security will remain inviolate until it is commingled with all other trash. As the Court stated in United States v. Mustone, supra, "Implicit in the concept of abandonment is a renunciation of any `reasonable' expectation of privacy in the property abandoned. The contrary suggestion strikes us as anomalous." 469 F.2d at 972.
The order granting the motion to suppress is reversed and this cause is remanded for further proceedings.
REVERSED and REMANDED.
DOWNEY, J., concurs.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting:
At issue is whether the police, without any legal cause, may trespass upon a person's private property and conduct a search thereon of the owner's sealed trash containers after the containers have been placed upon the front of the owner's property to be picked up by authorized trash collectors.
My reaction to this issue is the same as that of Judge Butterworth who commented as follows when he ruled that such police activity was improper:
It's reasonable for anyone to expect that no one is going to go through your trash, that the police will not pick up trash from a swale when an ordinance says only the licensed trash collectors can pick it up. A lot of times, the Court is not a hundred *1330 percent sure of the case, but at this time, the Court is ninety-nine point six percent sure.
I think the trial court's comments and ruling display not only good common sense but more importantly, good legal sense.
It is clear that under existing Florida case law on abandonment that Schultz did not "abandon" his trash containers so as to permit a warrantless search and seizure by the police. See State v. Oliver, supra, as quoted in the majority opinion. The disposal of the trash did not take place in the face of an imminent threat of arrest or seizure by the police, the trash was not discarded in an area where the appellant had no Fourth Amendment protection, and, at the time of the seizure, the owner had not relinquished possession and control of the trash. State v. Oliver, supra. Schultz was not even aware of the approach of the police, he was entitled to Fourth Amendment protection on his own property, and he had constructive possession of the trash containers situated on his property and the right to retrieve the contents thereof, right up until the time those containers were to be removed by authorized trash collectors. The abandonment exception to the warrant requirement simply doesn't fit.
The heart of the state's contention is that Schultz, by placing his trash containers out for collection, impliedly relinquished any expectation of privacy which he might have had therein. I cannot agree. As the United States Supreme Court stated in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967):
What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection... . But what he seeks to preserve as private, even in an area accessible to the public may be constitutionally protected.
This view was reiterated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968):
[W]herever an individual may harbor a `reasonable expectation of privacy,' (citation omitted) he is entitled to be free from unreasonable governmental intrusion.
In the recent case of Hansen v. State, 385 So.2d 1081 (Fla. 4th DCA 1980), this court relied upon. Katz, supra, in upholding a houseguest's right of privacy in his host's backyard.[1] More importantly, it was noted in Hansen that police officers who observed the backyard activities from an adjacent neighbor's yard, were simply trespassers who had no right to be where they were when they observed the alleged illegal activity.[2] A similar conclusion is mandated here where the police were also trespassers and had no right to be where they were when they searched and seized Schultz's trash containers.
In my view, a homeowner, upon placing items in a closed garbage container and placing the container in a position on his property where the container can be conveniently removed by authorized trash collectors, is entitled to reasonably expect that the container and the trash therein will be removed from his property only by those authorized to do so, and that such trash will be disposed of in the manner provided by ordinance or private contract. By sealing the containers in a secure manner and placing the containers on his own property, the owner has done everything within his own means to insure the privacy of the contents thereof, short of delivering the containers to a central disposal site himself.
While it is true that one cannot reasonably expect trash containers to be completely safe from the probing of dogs, curious children, the trash collectors themselves, and possibly others, common sense tells us that one should be able to expect that his property and the trash containers will be free from search and seizure by the police, neighbors and others who are and should be more knowledgeable and respectful of the property and privacy rights of others. The fact that dogs or others may occasionally, *1331 and wrongfully, trespass upon private property and go through one's "private" trash does not justify others in doing so. We should still be mindful of the adage that two wrongs do not make a right. Moreover, we are simply not involved here with the accidental disclosure of contraband because of the activities of dogs, children, or trash collectors.
Many of the cases, including the majority opinion here, seem to make a distinction if the garbage receptacle is located at the rear of or near the residence. Thus, it could be concluded that when trash collectors pick up the trash from the rear of the property there is no abandonment. But when local governmental regulations or private contracts require that property owners place the containers at or near the street for collection, ipso facto the owner has abandoned the contents. I think this distinction is pure fiction. In most cases trash is "abandoned" at the time it is first placed in a trash container. However, possession of the trash is not given up until the authorized trash collector removes it from the owner's property, so that there is no less, or more, possession of trash in containers located near the residence, than there is of containers located at the front of the property. The right to retrieve the trash and constructive possession of the trash containers is maintained by the owner right up until the time the trash is removed by authorized collectors.
Unquestionably, there is a very respectable line of authority which has held that there is no reasonable expectation of privacy available in the factual situation presented in this case. And, once evidence of illegal activity is detected, there is a natural tendency to soften the constitutional strictures against unreasonable searches. However, I think the average person does, in fact, have an expectation of privacy in this situation, and the pervasiveness of that expectation demonstrates its reasonableness. Consider the average citizen who, upon the occasion of taking his trash out to the front of his property on the day appointed for collection, reenters his house and almost immediately notices his next door neighbor rushing out to rifle through the trash that is contained in covered containers. What would his reaction be? I suggest he would be absolutely incensed. Assuming this conclusion is correct, there must be some sound reason therefor. The obvious reason is that, when people place their trash at a location near the street for accessibility by the trash collector, they do not intend to make the personal contents contained therein a matter for public scrutiny. The thought of one's neighbor having carte blanche to sift through one's trash to read one's discarded mail, to note one's discarded pill or whiskey bottles, or other more intimate items of domestic use is so abhorrent that the question in this case would seem to answer itself.
I posit the example of one's neighbor rather than the police because I think it serves to demonstrate the weakness of the suggestion that the placing of one's trash at a location designated by local government for collection means one has abandoned it and no longer has any expectation of privacy there. The principle, of course, applies equally to the police. If one has not abandoned the right of privacy in his trash to his neighbor, he certainly has not abandoned it to persons involved in law enforcement.
Consistent with our obligation to uphold the provisions of the federal and state constitutions prohibiting unreasonable searches and seizures of real and personal property, I believe we should require police authorities to establish the same legal cause usually required to justify a search of private property before entering such property to seize and search the trash containers of the property owner. Because it is undisputed that no such cause existed here I must dissent.
NOTES
[1] See footnote 4 on page 1086 of Hansen v. State, supra.
[2] See footnote 5 on page 1086 of Hansen v. State, supra.