HERSEY, Judge.
This appeal results from pleas of nolo contendere with the right reserved by each of the seven defendants to appeal the partial denial of their motions to suppress. The state cross-appeals from a determination that all of the defendants had standing to challenge all searches and seizures in issue.
The various arrests, searches and seizures were occasioned by an episode which occurred in 1978. Agent Chuck Dodge of the Drug Enforcement Administration received a tip during the latter part of July that a vessel utilized to transport marijuana into Delray Beach had been located at the dock behind a residence at 942 Bolender Drive in that city. Officer John Marinello of the Boca Raton Police Department obtained related information by examination of trash recovered in a controlled trash pickup from the residence of defendant Schearer in Boca Raton. A controlled trash pickup was also conducted at the residence on Bolender Drive.
Acting on this information, periodic surveillance of the Bolender Drive residence and dock was initiated on August 1, 1978, and continued until a boat was observed to have docked at the property in the early evening of August 6. ' Three law enforcement officers, Meeteer, Virgadamo and Pal-ler, took up surveillance from points on private property immediately to the east *565 and west of the residence, as well as from a point on the opposite side of the intracoas-tal waterway (with binoculars). No identifiable activity occurred until shortly after 1:00 a.m. when several of the defendants were seen carrying what appeared to be bales of marijuana from two to three feet in length and a foot and one-half thick from the right side of the vessel to the rear of the residence. Two of the officers then left to obtain assistance in effecting arrests. Additional officers arrived within fifteen to twenty minutes and took up positions around the residence.
When three individuals came out of the residence, picked up bales from the dock area and were about to re-enter the house, Agent Marinello and Sergeant Meeteer came from the bushes, identified themselves as police officers and advised defendants Born and Sims and co-defendant Creighton (not a party to this appeal) that they were under arrest. As these defendants scurried into the house followed by Officers Marinel-lo and Virgadamo, Sergeant Meeteer ordered defendants Heiden and Butler off the boat and into the residence, where these defendants were advised of their Miranda rights.
When the officers entered the residence, they noticed bales of marijuana stacked along the walls. Furthermore, from his position in the backyard Sergeant Meeteer was able to see a bale lying on the floor of the vessel. A search of the residence did not reveal any additional suspects.
During the early morning hours defendants Jones and Richmond drove up to the residence and on being asked what they were looking for, Richmond told Officer Rawls that she “live[d] at 942.” She then added, “No, I don’t. I live at 952.” Defendants continued down the street, turned around in the cul-de-sac and passed by the house for a second time. The vehicle was stopped. Officer Rawls ascertained that defendant Jerry Jones was in the car. The police officers had prior information that the telephone at the residence was issued to a Jerry Jones. Both defendants Richmond and Jones were arrested. At approximately 6:00 a.m. Sergeant Meeteer answered the telephone in the residence. On being asked if the “stuff” was ready, Meeteer replied that it was, and told the caller to come over. Ten to fifteen minutes later defendant Schearer arrived. Sergeant Meeteer recognized his voice as that of the individual he had spoken to and placed Schearer under arrest.
After all of the defendants had been arrested, the officers searched the vessel and recovered additional evidence.
An Information was filed charging all defendants with possession of marijuana in excess of one hundred pounds with intent to sell.
Defendants’ motion to suppress evidence seized from the vessel was granted except as to the bale that was in plain view on the boat and observed by Sergeant Meeteer. Additionally, defendants’ motion to suppress evidence obtained from the house was denied as was the motion to suppress items found in the trash pickups.
The question of standing was not raised as an issue since, at that time, defendants were assumed to have automatic standing because of the possessory nature of the crime charged. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). After the instant appeal was filed, the United States Supreme Court receded from the Jones standing rule in Rawlings v. Commonwealth of Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Accordingly, this court relinquished jurisdiction, directing the trial court to conduct an evidentiary hearing under the new rules of standing as announced by the United States Supreme Court. Such a hearing was held and the trial court (a different judge) found that all defendants had standing to contest the validity of all searches and seizures. This determination is the subject of the state’s cross appeal.
At the evidentiary hearing, only defendant Richmond presented testimony of an ownership interest in the premises searched. According to Richmond’s testimony, she *566 leased the premises and had given each of the defendants permission to be on the property to transport goods from the boat to the home. Butler, Heiden and Sims, the only other defendants to testify, claimed that they secured the premises in an attempt to assure privacy. These defendants purposefully chose to carry out their activity in the dark of night so as to be free from observation. During the day they maintained a low profile so as not to attract attention to the residence and, at night, they waited until all of the lights in the neighborhood and across the waterway were out before commencing their activities. Indeed, at one point, they stopped because of a single light at least six hundred feet away across the waterway. At all times they tried to maintain silence so as not to attract attention. Further, the property backed onto a canal and had bushes along both sides of the rear yard. The bushes, however, did not completely obscure the view of the backyard and in fact had several gaps.
No testimony was presented as to ownership of the vessel nor was there any indication that defendants took any measures to prevent observation into the vessel. Given this background we next consider each of the issues raised on appeal.
I. Whether the trial court erred in finding that all defendants had standing to contest the validity of all searches and seizures. (State’s cross appeal.)
In applying the Fourth Amendment, the critical inquiry is to determine whether a defendant had an expectation of privacy in the area searched. The fact that one may be legitimately on the premises, while relevant to one’s expectation of privacy, is not determinative of the issue. Some demonstration of standing beyond mere presence on the premises is required under both the United States and Florida constitutions. Inchaustequi v. State, 392 So.2d 319 (Fla. 4th DCA 1980).
Accordingly, defendants, with the exception of Richmond, failed to demonstrate standing to challenge the search of the residence and the trial court’s conclusion that they had such standing was in error. Further, no defendant demonstrated standing to contest the search of the boat.
II. Whether the observations of the police officers, while they were trespassers on private property and from one vantage point were using binoculars, violated defendants’ rights so that such observations cannot be used to establish probable cause.
Defendants had no interest in the property from which the activity was observed, thus the following quote from Ensor v. State, 403 So.2d 349, 352 (Fla.1981), is applicable:
The third situation concerns a “pre-in-trusion.” Here, the officer is located outside of a constitutionally protected area and is looking inside that area. If the officer observes contraband in this situation, it only furnishes him probable cause to seize the item. He must either obtain a warrant or have, some exception to the warrant requirement before he may enter the protected area and seize the contraband. As with the non-intrusion situation, the term “plain view” should not be employed here to prevent confusion. For clarity, we label an observation in the latter two non-Coolidge situations as a legally permissive “open view.”
As this court stated in the recent opinion of State v. Bell, 417 So.2d 822 (Fla. 4th DCA 1982):
Put simply, a person can only complain about illegal police intrusions into areas wherein that person has a valid personal expectation of privacy. Katz [v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)]. In the usual case, for instance, a homeowner would clearly have standing to complain about an illegal intrusion into his home but would not have standing to complain about an illegal intrusion into his neighbor’s home. In our view that is precisely the situation we have at hand. The appellees are complaining about an alleged illegal intrusion onto property in which they concededly had absolutely no expectation of privacy. Just as a defendant is barred from chai- *567 lenging an illegal search of the very premises upon which he is located absent a demonstration of personal privacy rights, we believe he is similarly barred from challenging an illegal intrusion onto property in which he admittedly has no interest and in which no search or seizure takes place.
We concede that most of the cases that involve police surveillance of illegal activity or contraband note the status of the police on the property from which the surveillance is made. See e.g. State v. Rickard, supra. In cases of “plain view” where the police are in a constitutionally protected area when they observe the contraband or illegal activity, it is clear that the police must have a legal right to be where they are vis-a-vis the privacy rights of the person complaining. However, when the police are located outside of a constitutionally protected area we do not believe a defendant has standing to complain of the legal status of the police observer absent evidence that the police have otherwise violated the defendant’s expectations of privacy. In other words, a person who conducts illegal activity or possesses contraband that is completely open to view from adjacent property will not generally be deemed to have a reasonable expectation of privacy. Lightfoot v. State, 356 So.2d 331 (Fla. 4th DCA 1978).
Defendants relied primarily upon surreptitious activity to establish an expectation of privacy. This is not a legitimate expectation which society is prepared to recognize.
Defendants may have demonstrated a subjective expectation that their activities would not be observed by persons who might intentionally or accidentally come upon the adjacent properties. However, the photographs of the backyard show that there were gaps in the bushes through which anyone could observe activity, including neighbors and police. Thus, defendants demonstrated no recognized expectation that their activities would not be subject to “open view.” Accordingly, through their observations, the police obtained sufficient probable cause for arrest and search.
As to the use of binoculars, see State v. Trepany, 409 So.2d 529 (Fla. 4th DCA 1982), in which this court held by implication that use of a nightscope does not violate constitutional rights. When law enforcement personnel have the right to look where they are looking there is no constitutional prohibition against the use of a device such as binoculars or a night-scope to enhance that view.
III. Whether the warrantless search of the residence was unconstitutional.
At approximately 1:10 on the morning of August 7, 1978, the police first observed persons carrying what they recognized as bales of marijuana from the boat to the house. This activity was initially observed from a vacant field, two or three hundred feet from the residence in question. After watching the movement for about five or ten minutes, the police decided to contact backup officers to assist in making arrests. Meeteer met with the other officers and explained the situation. All officers then proceeded to the residence and took up surveillance. However, it had begun to rain so that nothing was observed. Approximately twenty minutes later the rain stopped and the officers saw defendants resume unloading of the marijuana. At that time, as three defendants were returning with bales to the house, the officers emerged from the bushes, identified themselves, and advised the subjects that they were under arrest. One of the defendants was just entering the house with the two others right behind him. Marinello followed them into the residence and placed them in custody. Once inside the residence Marinello observed the additional bales of marijuana.
The officers obviously had probable cause to arrest the defendants, having observed them committing a felony. They also had the right to follow the defendants into the house to effect the arrest, since there was no time to obtain an arrest warrant. Rizzo v. State ex rel. City of Pompano Beach, 396 So.2d 869 (Fla. 4th DCA 1981). From his lawful position in the house, Marinello observed the bales of mari *568 juana in plain view. Accordingly, there was no unconstitutional search and subsequent seizure.
IV. Whether the warrantless search of the boat was unconstitutional.
Agent Meeteer observed one bale of marijuana on the vessel from his lawful position in the yard. That bale was in plain view and not the object of a search and seizure. The other bales found on the vessel were suppressed by the trial court. Because of our earlier determination that no defendant established standing to assert Fourth Amendment rights related to the vessel or its contents, the order of suppression was erroneous.
V. Whether the warrantless search of the containers was unconstitutional.
Defendants cite numerous cases holding that a warrant is required for a search of containers. While this is a principle well entrenched in search and seizure law, it is not applicable to the instant case. Here, it was obvious from the wrapping, shape, smell and residue observed that the bales were in fact marijuana, unlike the cases cited by defendants where the containers held unidentified material prior to being opened.
To elaborate, after observing defendants unloading the bales under the dark of night in a surreptitious manner, and after smelling the odor of marijuana emanating from the packages, and after observing marijuana residue on the floor where the bales were stacked, the police action in opening a package was not a search. Rather, the marijuana was in plain view and “plain smell,” not in a container requiring a search warrant.
YI. Whether the police officers acted outside their jurisdiction.
Defendants Sims, Born and Heiden complain that Marinello, a Boca Raton officer, was acting outside his jurisdiction in Delray Beach. This issue was never raised before the trial court; accordingly, it is not a proper point for appellate review. Further, the testimony is clear that Mari-nello was acting at the request and direction of the Delray Beach Police Department through Sergeant Meeteer. On either count the point is without merit.
VII. Whether the detention of Jones, Richmond and Schearer was illegal.
Defendants Jones, Richmond and Schearer reserved the right to appeal the denial of their motions to suppress, none of which were based on their allegedly illegal detention. Accordingly, they cannot raise this issue for the first time on appeal. See Brown v. State, 376 So.2d 382 (Fla.1979).
VIII. Whether the warrantless search of defendant Schearer’s trash was unconstitutional.
Only defendant Butler contends that the controlled trash pickups at defendant Schearer’s house and the residence where Butler was arrested were unconstitutionally impermissible. Butler never established a right to privacy or interest in any of the trash; therefore, he has no standing to contest the “trash searches.” Further, this court recently held that “once the trash is deposited on the swale for collection it is unreasonable to expect that its security will remain inviolate until it is commingled with all other trash.” State v. Schultz, 388 So.2d 1326, 1329 (Fla. 4th DCA 1980).
Accordingly, we affirm the partial denial of the motions to suppress on the basis that, as to all defendants except Richmond, there was no standing to assert Fourth Amendment rights in connection with the search of the residence and in any event and as to all defendants there was no illegal search and seizure. That portion of the order suppressing evidence discovered during a search of the vessel is reversed because no defendant had standing to object to that search. The order determining that all defendants had standing to contest all searches and seizures is reversed.
AFFIRMED IN PART AND REVERSED IN PART.
BERANEK and DELL, JJ., concur.