576 So.2d 319 (1991)
Greg ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 89-00739.
District Court of Appeal of Florida, Second District.
January 23, 1991.
*320 Joel E. Grigsby, Lake Alfred, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
PARKER, Judge.
Greg Anderson appeals his convictions for possession of cocaine, possession of drug paraphernalia, and misdemeanor possession of marijuana. He asserts that his motion to suppress should have been granted. We reverse and direct the trial court to enter an order granting the motion to suppress.
The relevant facts revealed at the motion to suppress hearing are as follows. Shortly after midnight Officer Roberts observed an unknown black male who appeared to be distributing unknown items to others. This man conducted some type of hand transaction with Anderson. Anderson then went to the front porch of his house, and upon seeing a marked patrol car, Anderson placed something in a planter. After the cruiser passed, Anderson retrieved something from the planter and placed it in his shoe. An officer detained Anderson, placed him in a cruiser, ran a warrants check, found no outstanding warrants, and removed Anderson from the cruiser. Subsequently an officer found a cocaine pipe in the cruiser. The officer then searched Anderson and found one gram of marijuana and a one dollar bill containing powdered cocaine in Anderson's shoe. The officer arrested Anderson for possession of cocaine, possession of drug paraphernalia, and possession of marijuana. The trial judge denied the motion to suppress, finding that Anderson had abandoned the pipe.
The first inquiry is whether the temporary detention of Anderson was lawful. We conclude that it was not. Generally, this case involves the following facts: (1) suspicious transactions of an unknown type, (2) taking place at midnight, and (3) Anderson's furtive movement at the sight of the police. These factual observations did not give the police a founded suspicion of criminal activity. See, e.g., the following cases where courts found no reasonable suspicion: Peabody v. State, 556 So.2d 826 (Fla. 2d DCA 1990) (officer observed the defendant approaching car in a high crime area and talking to the occupant who extended his hand, palm up, toward the defendant); Walker v. State, 514 So.2d 1149 (Fla. 2d DCA 1987) (police observed the defendant sitting on porch in a high crime area and attempting to conceal something upon seeing police); Dames v. State, 566 So.2d 51 (Fla. 1st DCA 1990) (police observed the defendant leaning in window of car in a drug area and walking away swiftly at the sight of the police); Daniels v. State, 543 So.2d 363 (Fla. 1st DCA 1989) (officer, who had past experiences on the crack cocaine squad, observed a large group gathered behind a tavern and suspected that the individuals were involved in drug deals; when defendant saw the police, he appeared very nervous and ran into a tavern); and Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989) (officer observed the defendant huddled with two other persons behind a bar in a drug area and saw the defendant flee at the sight of police).
The state relies on the case of Blanding v. State, 446 So.2d 1135 (Fla. 3d DCA 1984) to support its argument that the stop was lawful. In Blanding, the police observed the defendant transferring an unseen substance packaged in plastic bags (which the officer knew were commonly used as containers for contraband drugs) in exchange *321 for cash. In the instant case, the officer admitted that he could not see what was being transferred and did not see the exchange of money; therefore, Blanding is distinguishable.
Another case with somewhat similar facts is Thornton v. State, 559 So.2d 438 (Fla. 1st DCA 1990). In Thornton, an officer observed the defendant showing something to another man in an outstretched, cupped hand, on a street corner known for drug trafficking. Upon seeing the officer, the defendant quickly turned his back to the officer and put his hands in his groin area. The Thornton court distinguished Gipson and Peabody by stating that the Thornton case presented the additional fact that the defendant turned quickly and placed his hands in his groin area, which was a potentially dangerous act. The instant case is distinguishable because it does not contain any fact which could be interpreted as Anderson acting in a dangerous or threatening manner.
Once it is determined that the stop was unlawful, this court must determine whether Anderson's abandonment of the pipe was voluntary. It is clear that an abandonment is involuntary when an illegal search has commenced prior to the abandonment. State v. Perez, 15 F.L.W. D1355 (Fla. 3d DCA May 15, 1990); State v. Arnold, 15 F.L.W. D292 (Fla. 4th DCA Jan. 31, 1990); State v. Oliver, 368 So.2d 1331 (Fla. 3d DCA 1979), cert. dismissed, 383 So.2d 1200 (Fla. 1980). Courts, however, are split on whether an abandonment made after the commencement of an illegal stop is involuntary. Courts which have held that an abandonment is voluntary when a person discards an item after an illegal stop reason that the person has no reasonable expectation of privacy in the area where the item has been abandoned. See, e.g., Oliver, 368 So.2d at 1335. On the other hand, some courts have ruled that the seizure of evidence after improper police conduct is tainted and that the evidence must be suppressed. See, e.g., Stanley v. State, 327 So.2d 243 (Fla. 2d DCA), cert. denied, 336 So.2d 604 (Fla. 1976); Spann v. State, 529 So.2d 825 (Fla. 4th DCA 1988). See also State v. Bartee, 568 So.2d 523 (Fla. 1st DCA 1990) for a discussion of this issue. In Stanley, this court suppressed evidence which had been thrown out of a car after an illegal stop, ruling that "the fruits of the improper exercise of police power should have been suppressed." Stanley, 327 So.2d at 245. Further, in the case of State v. Thomas, 559 So.2d 463 (Fla. 2d DCA 1990), this court reversed an order granting suppression, finding that the defendant had abandoned the contraband prior to any detention or other intrusive act. These cases from the second district support the argument that an abandonment may be involuntary if made subsequent to an illegal stop. We find, based on the facts of the instant case, that Anderson's abandonment of the cocaine pipe was a result of his illegal detention.[1] Accordingly, the trial court erred in denying the motion to suppress.
Because of the inconsistency of court opinions on this issue, as discussed above, and the great public importance of achieving certainty in this area, we certify the following question to the supreme court:
CAN AN ABANDONMENT OF PROPERTY AFTER AN ILLEGAL POLICE STOP BUT NOT PURSUANT TO A SEARCH BE CONSIDERED INVOLUNTARY?
Reversed and remanded with directions to the trial court to enter an order granting the motion to suppress.
HALL, A.C.J., and PATTERSON, J., concur.
NOTES
[1] We have not overlooked the case of Patmore v. State, 383 So.2d 309 (Fla. 2d DCA 1980) where this court cited to Oliver with apparent approval. Patmore, however, is distinguishable from the instant case because the stop in Patmore was lawful. Hence, no argument could be made in Patmore that the abandonment resulted from an illegal detention, as was the situation in the instant case. This fact is determinative in that the police did not violate Patmore's fourth amendment rights in detaining him; therefore, the abandoned evidence was not the fruit of an improper exercise of police power.